

FILED

Mar 30 2012, 9:35 am

CLERK
of the supreme court,
court of appeals and
tax court

**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**G. JAYSON MARKSBERRY**
Marksberry Law Office
Danville, Indiana

ATTORNEY FOR APPELLEE:

**JAMES A. SMITH**
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| D.C., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 32A04-1106-DR-296 |
| | ) | |
| J.A.C., | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Stephanie LeMay-Luken, Judge
Cause No. 32D05-0809-DR-114

**March 30, 2012**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

In this case, a mother was offered a director-level position at a hospital near Nashville, Tennessee. Not only was this advanced position essentially unavailable to her in the Indianapolis market, but it also came with a salary increase of over $30,000. Nevertheless, when her ex-husband filed a motion to modify custody and prevent her from relocating with their son, the trial court found in his favor, focusing heavily on the mother's personal relationship with her boyfriend and the father's reduced parenting time if the mother relocated with their son. We conclude that this was clearly erroneous, inasmuch as it virtually ignored the immense benefit that the mother's new position would bring to her and the child. Moreover, any move of significant distance is going to deprive the nonrelocating parent of time with their child; however, this fact alone does not mean that the relocation is not in the child's best interest.

D.C. (Mother) appeals the trial court's order granting J.A.C.'s (Father) motion to modify custody and prevent Mother from relocating with their minor child, B.C. Specifically, Mother argues that although the trial court properly applied the burden shifting analysis contained in the Relocation Statute,[1] the trial court improperly concluded that relocation alone was sufficient to show that it was in B.C.'s best interest to remain in Indiana.

---

[1] Ind. Code § 31-17-2.2 et seq.

2

Father cross-appeals, contending that he is entitled to appellate attorney fees because Mother's argument on appeal is frivolous, and she has failed to adequately follow the appellate rules. Concluding that Father is not entitled to appellate attorney fees and that inasmuch as relocation alone cannot be used as a reason to support a custody modification, we reverse and remand with instructions that the trial court be mindful of the relocation when establishing Father's parenting time.

FACTS

Mother and Father were married on October 11, 1997, and a son, B.C., was born on January 5, 2003. Mother and Father separated on September 5, 2008, and the marriage was dissolved on December 4, 2008. The parties, by agreement, shared legal custody of B.C. Mother had physical custody of B.C., subject to Father's parenting time of three overnight visits per week and two weekends per month.

Mother filed her verified notice of intent to relocate on June 7, 2010, citing her reason for the relocation as a change in employment. On July 29, 2010, Mother filed a motion for temporary order permitting relocation. While this motion was pending, Mother took B.C. and moved to Hendersonville, Tennessee, near Nashville. Mother's motion for temporary order permitting relocation was denied on August 17, 2010, at which time, the trial court ordered that Mother return B.C. to Hendricks County, and she complied with the order.

On August 4, 2010, Father filed a motion to modify custody and prevent relocation of child and requested a full evidentiary hearing. On August 18, 2010, Mother

3

filed a motion for appointment of panel of child custody evaluators, which the trial court denied. The trial court appointed a Guardian Ad Litem (GAL), who filed his report on December 31, 2010.

On April 19, 2011, an evidentiary hearing on Father's motion to modify custody and prevent relocation commenced, and on May 3, 2011, the evidentiary hearing concluded. On May 27, 2011, the trial court issued its ruling granting Father's motion, finding, in part, that:

> Though Mother has repeatedly set forth in pleadings and through her testimony that her stated reason for relocation to Tennessee is new and better employment; the Court finds that her relationship with Jeffrey Jackson is the primary reason for her relocation. Mother moved into Mr. Jackson's home in Tennessee upon her relocation. Mother's relationship with Mr. Jackson and her current employment with a more regular work schedule, shorter shifts and a significantly higher salary of $84,400 are legitimate reason and purpose. Mother's relocation was made in good faith.

Appellant's App. p. 11 (emphasis added).

The trial court then noted that the burden shifted to Father to show that the relocation is not in B.C.'s best interests. The trial court recognized the 300-mile distance that the relocation would create between Father and B.C. and the current high gasoline prices, but acknowledged that Father had already purchased a fuel-efficient vehicle to accommodate the increased driving for parenting time exchanges. The trial court also observed that "[i]f the non-custodial parent would be able to conduct parenting time on a 3 day weekend, [B.C.] would be in a vehicle for 20 hours of a 72 hour weekend." Id. at 12.

4

The trial court noted that Father was very involved in B.C.'s life through cub scouts, sports, and schoolwork. The trial court observed that B.C.'s grandparents were in Indiana and that although the "Court has no doubt that the grandparents would visit with [B.C.] in Tennessee, it simply would be less significant." Id.

In its order, the trial court returned to Mother's reasoning for relocating, noting:

> Mother was well-employed in Indiana at St. Vincent's Hospital with a salary of $52,000. As previously set forth, Mother's salary has been significantly increased by her new employment. However, the primary reason for Mother's relocation is her relationship with Mr. Jackson.

Id. at 13 (emphasis added).

Mother and Father retained joint legal custody and Mother was given parenting each fall and spring break, over three-day weekends, Thanksgiving break, and Christmas break according to the Indiana Parenting Time Guidelines. Mother was also granted parenting time beginning the day after school has concluded for the spring semester until five days prior to the beginning of the school year. Mother now appeals.

DISCUSSION AND DECISION

I. Standard of Review

Mother argues that the trial court erred by granting Father's motion to modify custody and prevent relocation. The trial court made specific findings of fact and conclusions of law in its order granting Father's motion. Consequently, we must first determine whether the evidence supports the findings and, then, whether the findings support the judgment. K.I. ex rel. J.I. v. J.H., 903 N.E.2d 453, 457 (Ind. 2009).

5

We will set aside the judgment only if the findings or judgment are clearly erroneous. Carmichael v. Siegel, 754 N.E.2d 619, 625 (Ind. Ct. App. 2001). A finding is clearly erroneous when there are no facts or inferences to support it. In re M.B. & P.B., 666 N.E.2d 73, 76 (Ind. Ct. App. 1996). A judgment is clearly erroneous when it is unsupported by the findings and the conclusions entered on those findings. In re Adoption of H.N.P.G., 878 N.E.2d 900, 904 (Ind. Ct. App. 2008).

## II. Modification of Custody and Denial of Relocation

Under the relocation statutes, the relocating parent must file notice of intent to relocate and send a copy of the notice to the nonrelocating parent. Ind. Code § 31-17-2.2-1-(a). The nonrelocating parent may object to the relocation by either filing a motion to modify custody or by filing a motion to prevent relocation of the child. I.C. § 31-17-2.2-1(b); I.C. § 31-17-2.2-5(a). "The relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason." I.C. § 31-17-2.2-5(c). If the relocating parent satisfies this burden, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." I.C. § 31-17-2.2-5(d).

In considering the proposed relocation, the trial court shall take into account the following factors:

(1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

6

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

      (A) relocating individual for seeking relocation; and

      (B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

I.C. § 31-17-2.2-1(b).

Our Supreme Court has instructed that by implication, the factors set forth for custody determinations and modifications require consideration when determining what other factors may affect the best interest of the child. Baxendale v. Raich, 878 N.E.2d 1252, 1257 (Ind. 2008). These factors include the age and sex of the child; the parent's wishes; the child's wishes, with more consideration given to the child's wishes if the child is at least fourteen years old; the relationship that the child has with his or her parents, siblings, and any other person affecting the child's best interests; the child's adjustment to home, school, and the community; the health of all individuals involved; evidence of a pattern of domestic violence; and evidence that the child has been cared for by a de facto custodian. I.C. § 31-17-2-8; I.C. § 31-17-2-21. However, our Supreme

7

Court has explained that, unlike the Modification Statute,[2] the Relocation Statute does not necessarily require a substantial change in one of these factors for custody to be modified. Baxendale, 878 N.E.2d at 1257.

Here, in finding 10, the trial court acknowledged that Mother's stated reason for relocating was to accept employment, with shorter work schedules and a higher salary of $84,400, a significant gain from her current salary at St. Vincent's Hospital in Indianapolis of $52,000. Nevertheless, the trial court concluded that "the Court finds that her relationship with Jeffrey Jackson is the primary reason for her relocation." Appellant's App. p. 11. Notwithstanding this finding, the trial court concluded that Mother's relocation was made in good faith, thereby shifting the burden to Father to show that relocation was not in B.C.'s best interests.

Similarly, in finding 17, the trial court observed that Mother was "well-employed in Indiana by St. Vincent's Hospital with a salary of $52,000." Id. at 13. The trial court acknowledged that Mother's salary would be significantly increased by her new employment in Tennessee but nevertheless concluded that "the primary reason for Mother's relocation is her relationship with Mr. Jackson." Id.

We find the trial court's analysis of Mother's reason for relocating somewhat perplexing. Mother accepted a director-level position at St. Thomas Hospital in Nashville. Tr. p. 284-89. This position would permit Mother to advance beyond the position of registered nurse, which is an advancement not available in the Indianapolis

---

[2] I.C. § 31-17-2-21.

8

market without additional education and the breakdown of institutional barriers. Moreover, the salary difference of $32,400 is certainly not inconsequential and would provide additional opportunities for Mother and B.C. While giving cursory acknowledgement to the benefit that Mother's new employment would provide, the trial court mostly focused on her move as being motivated by her personal relationship with Jackson.

In findings 13 and 14, the trial court noted the 300-mile distance involved in Mother's relocation, the high cost of gasoline, and noted that "[i]f the non-custodial parent would be able to conduct parenting time on a 3 day weekend, B.C. would be in a vehicle for 20 hours of a 72 hour weekend." Appellant's App. p. 12. However, Father had already purchased a more fuel-efficient vehicle to help alleviate the fuel costs for the driving distance, and the trial court ordered that "Mother shall have parenting time any three-day weekend created by the school calendar." Id. at 14. Accordingly, it is reasonable to infer that B.C. would be in a vehicle 20 hours during those seventy-two-hour weekends as well.

In finding 16, the trial court observed that "[n]either party has attempted to thwart the other's contact with the child," noting that before the instant relocation action, "the parties worked well together to provide parenting time for each other and to handle [B.C.]'s care when Mother was working extended shifts." Id. at 12.

In finding 17, the trial court addresses Father's reasons for opposing relocation. More particularly, the trial court concluded:

9

> To allow relocation of the minor child would cause a significant deterioration of the relationship between Father and [B.C.]. [B.C.]'s relationship with his extended family would also deteriorate. However, Father has established himself as a very involved Father through all of [B.C.]'s life: home, church, school activities/events, cub scouts and sports. Extended family events and contact are the norm.

Id. at 13.

While we recognize that Father would not have as much contact with B.C. as he had previously enjoyed before the relocation, "if a relocation that deprives one parent of daily or weekly time with a child could never be in the child's best interests, then the statute would never allow for a long-distance move when the nonrelocating parent has exercised parenting time, as it plainly does in the proper circumstances." T.L. v. J.L., 950 N.E.2d 779, 789 (Ind. Ct. App. 2011), reh'g denied.

Moreover, Mother has been the primary caregiver. Indeed, Mother was awarded primary physical custody of B.C. following the dissolution of her and Father's marriage. See X.A.S. v. S.K., 928 N.E.2d 222, 229 (Ind. Ct. App. 2010) (recognizing that although moving the child to another state away from his mother would cause upheaval, "it would cause far greater upheaval to tear him away from his primary caregiver – the parent with whom he has lived for nearly a decade"). Under all these facts and circumstances, we conclude that the trial court's order was clearly erroneous and reverse and remand with instructions that the trial court be mindful of the relocation when establishing Father's parenting time.

### III. Appellate Attorney Fees

Father argues that he is entitled to appellate attorney fees for Mother's substantive and procedural bad faith. The discretion to award attorney fees under Appellate Rule 66(E) is limited to instances "when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." Thacker v. Wentzel, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003). Moreover, while Rule 66(E) provides us with discretionary authority to award attorney fees on appeal, "we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal." Id.

We have categorized claims for appellate attorney fees into "substantive" and "procedural" bad faith claims. Id. A substantive bad faith claim is one that is utterly devoid of all plausibility. Id. By contrast, a procedural bad faith claim occurs when a party flagrantly disregards the requirements of the appellate rules, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. Id. at 346-47.

Insofar as Mother has prevailed on appeal, Father's assertion that her appeal is frivolous fails. As for Father's argument that Mother engaged in procedural bad faith, while Mother's Appendix and Appellant's Brief may not fully conform to the Appellate Rules, Mother's shortcomings are not sufficiently egregious to award Father appellate attorney fees. Accordingly, Father's request for appellate attorney fees is denied.

The judgment of the trial court is reversed and remanded with instructions that the trial court enter an order that is mindful of Mother's relocation when establishing Father's parenting time.

DARDEN, J., and BAILEY, J., concur.