ATTORNEY FOR APPELLANT
G. Jayson Marksberry
Danville, Indiana

ATTORNEY FOR APPELLEE
James A. Smith
Carmel, Indiana

# In the
# Indiana Supreme Court



FILED
Nov 13 2012, 10:01 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 32S04-1206-DR-349

D.C.,

*Appellant (Respondent below),*

v.

J.A.C.,

*Appellee (Petitioner below).*

Appeal from the Hendricks Superior Court, No. 32D05-0809-DR-114
The Honorable Stephanie LeMay-Luken, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 32A04-1106-DR-296

**November 13, 2012**

**David, Justice.**

In this case, a mother sought to relocate out-of-state with her child. The father filed a motion to modify custody and prevent the child's relocation. After an evidentiary hearing, which was conducted over two days with ten witnesses testifying, the trial court ruled in the father's favor. The Court of Appeals reversed.

Today, we reiterate that in family law matters, trial courts are afforded considerable deference. Here, the trial court's judgment was well supported by the findings, and neither the judgment nor the findings were clearly erroneous.

## Facts and Procedural History

D.C. (Mother) and J.A.C. (Father) married in 1997. Their son (Child) was born in 2003. In 2008, when Mother and Father divorced, they agreed to share legal custody of Child. The agreement provided Mother with "physical residential custody," subject to Father's parenting time, which consisted of three overnight visits per week and two weekends per month.

In June 2010, Mother filed a notice of intent to relocate. In July 2010, Mother filed a motion for temporary order permitting relocation, and, while that motion was pending, she moved with Child to a location near Nashville, Tennessee. But shortly after, in August 2010, the trial court denied Mother's motion for a temporary order permitting relocation, and Mother complied with a court order for Child's return to Indiana.

Around the same time, Father filed a motion to modify custody and prevent Child's relocation. The trial court appointed a guardian ad litem (GAL) for Child, and the GAL filed a report with the court in December 2010. Several months later, the trial court held an evidentiary hearing on the issues of relocation and modification of custody. The GAL testified, consistent with his report, that he did not believe that the relocation was in the best interests of Child. The trial court also heard testimony from Mother, Father, Child's maternal and paternal grandmothers, and Child's godfather, among others.

The trial court granted Father's motion to modify custody and prevent Child's relocation. Specifically, the order provided that Mother and Father would retain joint legal custody, Father would become the primary physical custodian, and Mother would be granted parenting time during school breaks and on any other occasions she may be visiting central Indiana.

Mother appealed, and the Court of Appeals reversed the trial court. D.C. v. J.A.C., 966 N.E.2d 158 (Ind. Ct. App. 2012). The Court of Appeals also declined to award appellate attorney's fees to Father on Father's request. Id. at 164.

We granted transfer. We summarily affirm the decision of the Court of Appeals that Father is not entitled to appellate attorney's fees under these circumstances. Ind. Appellate Rule 58(A)(2).

## Standard of Review

Here, the trial court made specific findings of fact and conclusions of law in its order modifying custody and preventing Child's relocation. Accordingly, we "'shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.'" Best v. Best, 941 N.E.2d 499, 502 (Ind. 2011) (quoting Ind. Trial Rule 52(A)).

"'Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference.'" Id. (quoting Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997)). An appellate court neither reweighs the evidence nor reassesses witness credibility, and it views evidence most favorably to the judgment. Id.

## Relocation

When a parent files a notice of intent to relocate, the nonrelocating parent may object by moving to modify custody or to prevent the child's relocation. Ind. Code § 31-17-2.2-1(b); 31-17-2.2-5(a). When this objection is made, "[t]he relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason." I.C. § 31-17-2.2-5(c). If the relocating parent shows good faith and a legitimate reason, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." Id. § 31-17-2.2-5(d).

A court must weigh the following factors in considering a proposed relocation, as set forth in Indiana Code section 31-17-2.2-1(b):

(1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

    (A) relocating individual for seeking relocation; and

    (B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

"Other factors affecting the best interest of the child" include, among other things, the child's age and sex; the parents' wishes; the child's wishes, with the wishes of children fourteen years or older being given more weight; the child's relationship with parents, siblings, and any other person affecting the child's best interests; and the child's adjustment to home, school, and the community. I.C. § 31-17-2-8; see also Baxendale v. Raich, 878 N.E.2d 1252, 1257 (Ind. 2008).[1] When one parent is relocating, it is not necessary for a court to find a substantial change in one of these "other factors" before modifying custody. See Baxendale, 878 N.E.2d at 1257.

In this case, the trial court found that Mother met the initial burden of showing legitimate reason and good faith in relocating.[2] The trial court then turned to the issue of whether relocation of Child was in Child's best interest. It ultimately found that relocation would not be in Child's best interests, citing the following reasons: the distance involved in the move was significant; Father was very involved in Child's daily activities and education; both maternal and paternal grandparents, along with other extended family, were involved in Child's daily life in Indiana; and relocation would cause "significant deterioration" in Child's relationships with

---

[1] As the Court of Appeals correctly pointed out, this Court "has instructed that by implication, the factors set forth for custody determinations and modifications require consideration when determining what other factors may affect the best interest of the child." D.C., 966 N.E.2d at 162 (citing Baxendale, 878 N.E.2d at 1257).

[2] The trial court's finding on whether Mother's proposed relocation was made in good faith and for legitimate reason was as follows:

> Though Mother has repeatedly set forth in pleadings and through her testimony that her stated reason for relocation to Tennessee is new and better employment; the Court finds that her relationship with Jeffrey Jackson is the primary reason for her relocation. Mother moved into Mr. Jackson's home in Tennessee upon her relocation. Mother's relationship with Mr. Jackson and her current employment with a more regular work schedule, shorter shifts and a significantly higher salary of $84,400 are legitimate reason and purpose. Mother's relocation was made in good faith.

4

Father and Child's extended family.[3]

[3] The trial court's detailed findings on whether relocation was in the best interest of Child were as follows:

13.  The distance involved in Mother's move is a significant drive to exchange [Child] for parenting time.  The move is approximately 300 miles.  If the non-custodial parent would be able to conduct parenting time on a 3 day weekend, [Child] would be in a vehicle for 20 hours of a 72 hour weekend.

14.  Currently, gas prices hover around $4.00 a gallon.  Father has already purchased a vehicle with better gas mileage in order to accommodate the increased driving for parenting time exchanges.

15.  Father is a very involved Father through daily activities, cub scouts, sports and [Child's] education.  Father would not be able to continue any of these activities if [Child] is relocated to Tennessee.  Both maternal and paternal grandparents (and other extended family) are involved in [Child's] daily life in Brownsburg, Indiana.  Grandparents attend school events and sports events (games) to watch [Child].  This would cease if [Child] is relocated to Tennessee.  Instead of [Child] being part of and involved with an extended family, [Child] would be part of Mother's and Mr. Jackson's daily life only.  The Court has no doubt that the grandparents would visit with [Child] in Tennessee, it simply would be less significant.

16.  Neither party has attempted to thwart the other's contact with the child.  Prior to the relocation issue the parties worked well together to provide parenting time for each other and to handle [Child's] care when Mother was working extended shifts.  While the parties' communication with each other is not perfect, it never put the child at risk.  Neither party speaks negatively about the other.  Mother did, however, enroll [Child] in elementary school in Tennessee without notice or discussion with Father.  Mother did promptly return [Child] to Father upon order of this Court.  This action obviously caused confusion for [Child] and was not necessary.

17.  The reason provided by Mother for relocating is employment.  Mother was well-employed in Indiana at St. Vincent's Hospital with a salary of $52,000.  As previously set forth Mother's salary has been significantly increased by her new employment.  However, the primary reason for Mother's relocation is her relationship with Mr. Jackson.  Father's stated reasons for opposing the relocation and for modification of physical custody are that [Child] has established relationships with the family (in Indiana) that include extended family that all provide nurturing, support and stability for [Child].  Further [Child's] relocation to Tennessee would prevent regular, frequent and meaningful contact with Father and other family members.  The Court finds that last stated reason to be most significant.  To allow relocation of the minor child would cause a significant deterioration of the relationship between Father and [Child].  [Child's] relationship with his extended family would also deteriorate.  However, Father has established himself as a very involved Father through all of [Child's] life: home, church, school activities /events, cub scouts and sports.  Extended family events and contact are the norm.  If Father needs child care, extended family provides this for him.  If [Child] is relocated to Tennessee, Father would not be able to attend school events, cub scouts or sports practices and games with [Child].  Father's involvement to this level was occurring prior to Mother's Notices of Intent to Relocate.

18.  Mother and Joyce Lowry describe the school system in Hendersonville as "year round."  This is simply incorrect.  Fall break in October appears to be extended in the Hendersonville school calendar due to the earlier start date.  In addition, there are three-day weekends or single days off

The Court of Appeals found that the trial court's best-interest determination was clearly erroneous.  D.C., 966 N.E.2d at 160, 164.  In doing so, the Court of Appeals focused on several of the trial court's findings.

The Court of Appeals first noted Mother's new management-level employment position in Tennessee and her significant salary increase.  Id. at 163.  The Court of Appeals found that the trial court gave only "cursory acknowledgment to the benefit that Mother's new employment would provide."  Id.  It also suggested that the trial court undervalued the benefit of Mother's new job by finding that Mother's primary motivation in moving was to be with her boyfriend.  Id.

The Court of Appeals also noted the burden of travel, stressing the trial court's finding that Father had already purchased a more fuel-efficient vehicle.  Id.  The Court of Appeals added that the time that Child would spend in transit during any three-day weekend visit is a neutral factor because it would be incurred regardless of which parent was visiting Child.  Id.

The Court of Appeals then acknowledged the trial court's finding that relocation would cause the deterioration of Child's relationship with Father and Child's extended family.  But the Court of Appeals commented,

> While we recognize that Father would not have as much contact with B.C. as he had previously enjoyed before the relocation, "if a relocation that deprives one parent of daily or weekly time with a child could never be in the child's best interests, then the statute would never allow for a long-distance move when the nonrelocating parent has exercised parenting time, as it plainly does in the proper circumstances."

Id. (quoting T.L. v. J.L., 950 N.E.2d 779, 789 (Ind. Ct. App. 2011)).

Father argues that the Court of Appeals failed to afford the trial court the high amount of deference appropriate in cases involving family law.  Father specifically argues that the Court of Appeals focused on Mother's "better paying job" instead of giving meaningful consideration to

---

in the Hendersonville school calendar.  Three-day weekends or single days do not assist with increasing parenting time for Father if [Child] is relocated.

19.  The Court finds that it would not be in the best interests of [Child] to be relocated to Tennessee.

6

the "numerous" other factors that the trial court found in favor of preventing relocation and modifying custody.

> This Court has expressed the importance of appellate deference in family law matters:

> Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to access credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

Best, 941 N.E.2d at 502. On the other hand, appellate courts "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence." Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002) (quoting Brickley v. Brickley, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965)).

The standard of review is not de novo. As stated above, under these circumstances, appellate courts employ a clear-error standard. Consequently, "[o]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." Id. (alteration in original) (quoting Brickley, 247 Ind. at 204, 210 N.E.2d at 852). This Court "will not substitute [its] own judgment if any evidence or legitimate inferences support the trial court's judgment. The concern for finality in custody matters reinforces this doctrine." Baxendale, 878 N.E.2d at 1257–58.

Here, the trial court conducted the evidentiary hearing over two days. It heard the testimony of ten witnesses, including the GAL, who testified that he believed relocation was not in the best interest of Child. The trial court also heard testimony that Child had attended preschool, kindergarten, first grade, and after school care in Hendricks County; Child was actively involved in many activities, including sports; Child's best friend currently lives close to Child; Child's close relationships with his godparents, older step-brother, and grandparents would deteriorate if Child were relocated; and Child has progressed in his religious faith in his community.

Contrary to the Court of Appeals's assertion, the trial court here did not base its conclusion that relocation was not in the best interest of Child solely on the fact that Father would not have as much contact with Child. We agree with the Court of Appeals that there is no blanket rule that a relocation that deprives a parent of time with a child is always against the best interest of the child. But a trial court can, and in fact must, take into account the child's relationship with parents, which is a best-interest factor listed in Indiana Code section 31-17-2-8(4)(A). Here, the trial court considered Father and Child's relationship, among a host of other factors.

Accordingly, we cannot conclude, consistent with the applicable clear-error standard of review, that there are no facts to support the trial court's judgment either directly or by inference. In fact, the trial court had ample support for its decision. As this Court has stated,

> [W]here a very young child or baby is involved, a move out of state may have little or no effect on the child. For an older child who has formed friendships, attends school, and participates in activities or sports, is involved in church, or enjoys the security of supportive relationships with nearby relatives or others in his community, a move out of state may have a much more significant effect.

Baxendale, 878 N.E.2d at 1257 (alteration in original) (quoting Lamb v. Wenning, 600 N.E.2d 96, 99 (Ind. 1992)). Ultimately, although an appellate court in this case may be able to reach a different conclusion from that of the trial court, doing so would involve reweighing the evidence, which is not permitted.

## Conclusion

Trial courts are afforded a great deal of deference in family law matters, including relocation and custody disputes. The trial court, in this case, made sufficient and supportable findings to sustain its decision to prevent relocation and modify custody. Applying the highly deferential standard of review, we affirm the trial court.

Dickson, C.J., and Rucker, Massa, and Rush, JJ., concur.

8