# FOR PUBLICATION



**FILED**
Oct 09 2013, 6:04 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DEBORAH M. AGARD**
Law Office of Deborah M. Agard
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

<table>
<tr><td>IN RE: THE MARRIAGE OF</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>L.C.,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>    Appellant-Respondent,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>      vs.</td><td>)</td><td>No. 32A01-1303-DR-91</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>T.M.,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>    Appellee-Petitioner.</td><td>)</td><td></td></tr>
</table>

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Karen M. Love, Judge
Cause No. 32D03-0704-DR-41

**October 9, 2013**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

In this case, appellant-respondent, L.C. (Mother) challenges the trial court's denial of her petition to modify custody of the parties' two children, K.M. and D.M. The original order that was entered in 2007 provided that Mother and appellee-petitioner, T.M. (Father), share both legal and physical custody over the children. Mother resides in Carmel where the children attended school and Father lives in Mooresville. Both of the children play in a Carmel travel soccer league that continues throughout the year.

Because of the logistics involved in the soccer league, the children's desire to live with Mother, and other changed circumstances that have occurred since 2007, Mother filed a petition for custody modification that the trial court subsequently denied. Mother asserts that the trial court's reliance on the parties' initial agreed shared physical custody arrangement as a basis for denying the modification request is clearly erroneous because of the changed circumstances and modification is in the children's best interests.

After reviewing the record, we believe that Mother presented sufficient evidence at trial warranting modification of custody. More particularly, Mother demonstrated that substantial changes in circumstances have occurred since the entry of the original decree, and that a change in the original physical custody order is in the children's best interests. Therefore, we conclude that the trial court's judgment denying Mother's petition was clearly erroneous. Thus, we reverse the judgment of the trial court and remand this cause with instructions that an order be entered based on the evidence presented that modifies the custody arrangement in accordance with the children's best interests.

FACTS

Mother and Father divorced in 2007, and submitted their partial custody, support, and property settlement agreement that the trial court approved on November 16, 2007. Under the agreement, the parents shared legal and physical custody of their children, D.M., born in 1999, and K.M., born in 2001. The children stay with Father, who resides in Mooresville, on Mondays, Tuesdays and alternate weekends from Friday through Sunday. They are with Mother on Wednesdays, Thursdays, and alternate weekends from Friday through Sunday. Mother lives in Carmel and the children are enrolled in the Carmel school system.

At some point, the trial court appointed a parenting coordinator for the family. Various orders were issued between September 2008, and April 2010, based on the parenting coordinator's recommendations. These orders primarily concerned the parties' reimbursement of expenses to each other, email exchanges, and counseling services.

In the trial court's order of September 18, 2008, it was determined that

> Father will enroll children in fall sports and cover the sign-up costs of each. Mother will enroll children in spring sports and cover the sign-up costs of each. Parents agree to purchase necessary equipment for each child for each sport to have at their house.

Appellant's App. p. 24.

When the children began the 2011-12 school year, the transportation arrangement changed so that all of Father's parenting time exchanges occurred at the Sam's Club parking lot on the west side of Indianapolis. On the days that D.M. and K.M. are

3

scheduled to be in school, Father drives them from his home to the exchange point, and Mother or her husband picks up the children and takes them to school.

Mother enrolled K.M. in travel soccer in the spring of 2012, and the program lasts the entire year. D.M. was in her second year playing for Carmel's travel soccer team. Mother sought to modify the parties' physical custody arrangement to better accommodate the children's schedules, the travel distance between the parties' residences, and the difficulties that the children were encountering when they stayed with Father.

Mother averred in her petition to modify custody filed on June 7, 2012, that substantial changes in circumstances had occurred. In particular, Mother contended that the children are required to spend many hours in the car being transported between Carmel and Mooresville, that the children expressed a strong desire to live with their mother, and that the children would benefit from having a structured routine primarily in their mother's home. In fact, there were instances where the children had to do their homework in the car while being transported from one residence to another.

At the hearing that was conducted on November 12 and December 4, 2012, the Guardian ad Litem (GAL) testified that if the current arrangement is maintained, the children will become very angry with Father and it will "irreparably harm his relationship with his children." Tr. p. 65-67. The GAL pointed out that because of the distance involved and the children's desires to be with their friends, they—along with Mother— want to spend every other weekend with Father, rather than continuing to spend Mondays

4

and Tuesdays at his residence. The children had also reported that there was some measure of distress they perceived as negative and disparate treatment of them in Father's home as compared to the more favorable treatment of their step-siblings. The GAL also testified that the current arrangement will likely "drive a huge wedge between Dad and his children." Id. at 66.

Following the GAL's interviews with both parents, the step parents, the children, the parenting coordinator, a therapist, a prior GAL who has worked with the family, and the Carmel soccer coach, the GAL recommended that the parenting arrangement be modified such that:

1. [The children] spend every other weekend from Friday evening . . . through Sunday . . . with Father, and
2. All exchanges for the children will be at a parent's home following the current Indiana Parenting Time Guideline recommendation that the receiving parent picks up the child, and
3. If Father wishes to add a Sunday overnight to his weekend, Father is responsible for transporting the children to school on time for the start of school . . . and
4. Father ensures that [the children] are at all commitments associated with their travel league soccer including practices, games and tournaments, and
5. If Father is unable, unwilling, incapable of fulfilling his obligation to getting the children to their soccer commitments that he forego his parenting time with [D.M.] and/or [K.M.], alternately Father may make appropriate timely arrangements for [D.M.] and/or [K.M.] to meet the commitments (carpooling, asking Mother to facilitate, etc.), and
6. Father is encouraged but not required to exercise a mid-week visit (no overnight) with the children (as soccer practices may well be during these evenings), and
7. If at all possible Father is encouraged to attend practice, scrimmage, or games as often as he is reasonably able to do so, and
8. The parents should continue to work with the Parenting Coordinator . . . regarding the extended parenting time (school breaks, summer, etc.).

GAL Rpt. p. 16.

Following the hearing, the trial court determined that Mother's enrollment of K.M. in the travel soccer league was a direct violation of the 2008 order that requires Mother to enroll the children in spring sports, and Father to enroll them in fall sports. Moreover, the trial court found that Mother failed to prove that a substantial change has occurred in at least one of the statutorily enumerated factors set forth in Indiana Code section 31-17-2-8. In denying Mother's petition to modify custody, the trial court specifically found that

> 8. The Court understands that travel between the parents' homes is inconvenient but these parents agreed to joint legal and joint physical custody of the children and equal parenting time. A significant part of the inconvenience here stems from the children's involvement in soccer. Both parents support the children's involvement in soccer. Therefore, the parents and children must accept and deal with the personal inconvenience that the children's soccer programs create.

Appellant's App. p. 21.[1] Mother now appeals.

### DISCUSSION AND DECISION

As noted above, Mother argues that the trial court erred in denying her motion to modify custody. Specifically, Mother contends that the trial court's reliance on the parties' original shared custody arrangement as a basis for denying the petition

---

[1] Although the trial court also found that it would not reward Mother for violating the 2008 order that required her to sign up the children for spring sports and for Father to sign them up for fall sports, it has been held that isolated incidents of misconduct should not form the basis for modifying custody because it would "impermissibly punish the parent for noncompliance with the custody agreement." Hanson v. Spolnik, 685 N.E.2d 71, 78 (Ind. Ct. App. 1997). Similarly, we believe that this rule should apply to custody modifications. Here, there was no evidence that Mother and K.M.'s wishes for K.M. to participate in a year-round soccer program amounted to an "egregious violation of that order placed a child's welfare at stake." Id.

6

misapplies the law that governs custody modifications. Mother argues that the evidence established that the physical custody arrangement should be modified because the circumstances have substantially changed since the entry of the original decree, and that modification is in the children's best interests.

## I. Standard of Review

We initially observe that Father did not file an appellee's brief. When an appellee does not submit a brief, we do not undertake the burden of developing arguments for that party. Spencer v. Spencer, 990 N.E.2d 496, 496 (Ind. Ct. App. 2013). Instead, we apply a less stringent standard of review and may reverse if the appellant establishes prima facie error. Id. Prima facie error is "error at first sight, on first appearance, or on the face of it." Van Wieren v. Van Wieren, 858 N.E.2d 216, 221 (Ind. Ct. App. 2006).

Custody modification lies within the sound discretion of the trial court, and the decision will be reversed only upon a showing of manifest abuse of discretion. Fields v. Fields, 749 N.E.2d 100, 107-08 (Ind. Ct. App. 2001). Such an abuse occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Id. at 108. We will neither judge the credibility of witnesses nor reweigh the evidence. Id.

Neither party requested, nor did the trial court enter, special findings in this case; therefore, it should be reviewed under the general judgment standard. Shelby Eng'g Co. v. Action Steel Supply, Inc., 707 N.E.2d 1026, 1027 (Ind. Ct. App. 1999). Under this

standard, the judgment will be affirmed if it can be sustained on any legal theory consistent with the evidence. Id.

## II. Denial of Motion for Custody Modification

Indiana Code section 31-17-2-21 provides that a court may not modify a custody order unless the petitioner shows that (1) the modification would be in the best interests of the child, and that (2) a substantial change has occurred in one or more of the following facts a court must consider under Indiana Code section 31-17-2-8:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

    (A) the child's parent or parents;

    (B) the child's sibling; and

    (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

    (A) home;

    (B) school; and

    (C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

In addressing the issues that Mother presents, we first deem it necessary to discuss this court's opinion in D.C. v. J.A.C., 966 N.E.2d 158 (Ind. Ct. App. 2012), along with our Supreme Court's subsequent grant of transfer in that case.

In D.C., the parties had one son, B.C., born to the marriage in 2003. The marriage was dissolved on December 4, 2008. The parties shared legal custody of B.C., subject to Father's parenting time of three overnight visits per week and two weekends per month.

On June 7, 2010, Mother filed a verified notice of intent to relocate, citing the reason for the relocation as a change in employment as a hospital director in Tennessee. At the time, Mother was working at St. Vincent Hospital in Indianapolis and earning an annual salary of $52,000. Not only was this advanced position essentially unavailable to her in the Indianapolis market, but it also came with a salary increase of over $30,000. Mother then filed a motion for temporary order permitting relocation. While this motion was pending, Mother took B.C. and moved to Hendersonville, Tennessee, near Nashville. The trial court denied Mother's motion for a temporary location change on August 17, 2010. The trial court ordered that Mother return B.C. to Hendricks County, and she complied. Id. at 161.

On August 4, 2010, Father filed a motion to modify custody and prevent the relocation of B.C. and requested an evidentiary hearing. Following a hearing, the trial court issued its ruling, finding in part that:

> Though Mother has repeatedly set forth in pleadings and through her testimony that her stated reason for relocation to Tennessee is new and better employment; the Court finds that her relationship with Jeffrey Jackson is the primary reason for her relocation. Mother moved into Mr. Jackson's home in Tennessee upon her relocation. Mother's relationship with Mr. Jackson and her current employment with a more regular work schedule, shorter shifts and a significantly higher salary of $84,400 are legitimate reasons and purpose. Mother's relocation was made in good faith.

Id. (emphasis in original).

The trial court then noted that the burden was on Father to demonstrate that the relocation is not in B.C.'s best interests. The trial court recognized that the 300-mile distance that the relocation would create between Father and B.C. and the current high gasoline prices, but acknowledged that Father had already purchased a fuel-efficient vehicle to accommodate the increased driving for parenting time exchanges. It also observed that "[i]f the non-custodial parent would be able to conduct parenting time on a 3 day weekend, [B.C.] would be in a vehicle for 20 hours of a 72 hour weekend." Id.

The trial court returned to Mother's reasoning for relocating, noting:

> Mother was well-employed in Indiana at St. Vincent's Hospital with a salary of $52,000. As previously set forth, Mother's salary has been significantly increased by her new employment. However, the primary reason for Mother's relocation is her relationship with Mr. Jackson.

Id. at 13 (emphasis added).

10

Mother appealed, and we noted that her evidence and stated reason for relocating was to accept employment, with a shorter work schedule and a higher salary of $84,000, which was a significant gain from her current salary at St. Vincent Hospital in Indianapolis of $52,000. Nonetheless, the trial court found that Mother's relationship with another individual was the primary reason for her relocation. Id. at 163.

In our opinion, we noted that Mother's acceptance of a new position in Nashville "would permit Mother to advance beyond the position of registered nurse, which is an advancement not available in the Indianapolis market without additional education and the breakdown of institutional barriers. Moreover, the salary difference of $32,400 is certainly not inconsequential and would provide additional opportunities for Mother and B.C." Id. We also noted that Mother has been B.C.'s primary caregiver and was awarded primary physical custody of B.C. following the dissolution of her and Father's marriage. We then commented that

> While we recognize that Father would not have as much contact with B.C. as he had previously enjoyed before the relocation, 'if a relocation that deprives one parent of daily or weekly time with a child could never be in the child's best interests, then the statute would never allow for a long-distance move when the nonrelocating parent has exercised parenting time, as it plainly does in the proper circumstances.'

Id. at 163.

As a result, we concluded that, when considering all of the facts and circumstances, the trial court's order was clearly erroneous and we remanded with

11

instructions "that the trial court be mindful of the relocation when establishing Father's parenting time." Id. at 164.

As noted above, our Supreme Court subsequently granted Father's petition for transfer, and observed that

> Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to access credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

D.C. v. J.A.C., 977 N.E.2d 951, 956 (Ind. 2012) (quoting Best v. Best, 941 N.E.2d 499, 502 (Ind. 2011)).

It also observed that "'on the other hand, appellate courts are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence.'" Id. at 956-57 (quoting Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002)).

Notwithstanding the facts and circumstances set forth above regarding Mother's evidence that she presented at the hearing and her stated reasons for relocation, our Supreme Court affirmed the trial court's decision, observing that

> Contrary to the Court of Appeals's assertion, the trial court here did not base its conclusion that relocation was not in the best interest of Child solely on the fact that Father would not have as much contact with Child. We agree with the Court of Appeals that there is no blanket rule that a relocation that deprives a parent of time with a child is always against the best interest of the child. But a trial court

12

can, and in fact must, take into account the child's relationship with parents, which is a best-interest factor listed in Indiana Code section 31-17-2-8(4)(A). Here, the trial court considered Father and Child's relationship, among a host of other factors.

Accordingly, we cannot conclude, consistent with the applicable clear-error standard of review, that there are no facts to support the trial court's judgment either directly or by inference. In fact, the trial court had ample support for its decision.

Id. at 957.

We are certainly mindful of our Supreme Court's opinion in D.C. that admonishes against appellate reversal of custody orders and the reminder of the great deference afforded to trial courts in custody matters. However, we do not believe that the rationale espoused in D.C. stands for the proposition that an appellate court's hands should be so inextricably bound against reversing decisions that do not serve the children's best interests and promote stability. Indeed, continuity and stability in the life of children is an important component in determining the proper custodial arrangement for a child. Carmichael v. Siegel, 754 N.E.2d 619, 636 (Ind. Ct. App. 2001).

In this case, Mother presented evidence in accordance with Indiana Code section 31-17-2-21, establishing that the existing shared physical custody order was no longer in the children's best interests and there had been substantial changes in the circumstances since the entry of the prior custody order that warranted modification. Indeed, the children were six and eight years old when the original custody order was issued in 2007. However, they were eleven and thirteen at the time of the 2012 modification hearing.

The GAL pointed out in her report that

13

Most children ease away from their parents opting for more time spent among their peers as they seek to find their own way. It is not uncommon that parents who cling too tightly and 'over control' their child when the child seeks to become more independent find that the child that they love reacts by becoming 'resentful,' 'distant,' and/or 'hateful in their demeanor towards the loving parent.' Estrangement between the child and parent can be short lived or last a lifetime.

GAL Rpt. at 15.

Additionally, as discussed above, the GAL testified at the modification hearing that the children's wishes had changed and that they had become distressed in light of the negative, disparate treatment they were receiving when compared to the better treatment that their step-siblings were receiving. Tr. p. 1-23, 57-58, 91, 98. In fact, the children were "adamant" that the parenting and custody schedule should change, and they felt that the environment in Father's home was "hostile." Id. at 57-58, 67. Also, KM expressed his desire to play in the Carmel soccer program because he believed that it was more challenging than the Mooresville program.

The GAL recognized that as the children grew older, the danger of resentment increased as Father's rigid and authoritarian parenting style remained constant. Also, the GAL's report indicated that the "interpersonal relationships in Father's home between Stepmother, D.M., and K.M., are troubling. If the home environment is hostile and angry as described by the children, reducing the amount of exposure is appropriate and strongly desired by the children." GAL Rpt. p. 15.

The GAL also testified that

Well we can talk about distance. We can talk about travel soccer. We can talk about, you know, the school and their friends and all that. We can talk about their

14

maybe rocky relationship within Dad's household. What I fundamentally think that this really—the change needs to happen, the kids are very adamant that this is what they want. They have good reasons for it. I feel that if Dad holds firm to his current position, the kids are going to be so angry and so disenfranchised it will irreparably harm his relationship with his children for a long time and I would like to save that relationship. It's not about the kids getting what they want and Dad losing everything. Absolutely not. I would love for Dad to be more involved with the kids and that maintain itself. He wants to be. He talks a good game but at this point if they are forced to continue in the current Monday, Tuesday at Dad's, Wednesday, Thursday at Mom's and alternating Friday, Saturday, Sunday at either parent['[s, it's going to drive a huge wedge between Dad and his children. . . . would love to see Dad fully engaged in the kids and get his head around you know, that he is going to be a car dad. I hate to say that but I can see every other weekend is what the kids have asked for. Friday night through Sunday night. I suggest adding on to Monday morning if he can get them to Carmel school on time, not doing the exchange at Sam's Club. I mean, we're not young kids anymore. We're pre-teens and teenagers and encourage Dad to come up and participate in a mid-week visit. I don't think that the overnights work, and I think they need to, you know, kind of be settled. Dad says that they're staying, spending so much time on the school bus any way, what difference does it make to travel. They're with their peers. It makes a big difference.

Tr. p. 65-67 (emphases added).

The unrefuted evidence shows that the children informed the GAL that they wanted the schedule to change to alternate weekends with Father. GAL Rpt. p. 5-6. D.M. considered her involvement in the travel soccer league to be the center of her universe and aspired to play in high school and perhaps even college. Id. at 4. D.M.'s coach believed that such an aspiration was realistic in light of her talent. Id. at 15.

As noted above, the evidence also showed that the children have a difficult time having their friends at Father's house because of the logistics that are involved in transportation. The drive time from Father's residence to Mother's house—not including the exchange of the children—is approximately one hour. Id. at 6. It was also

established that the children were unable to maintain friendships with their peers in Carmel while visiting with Father on an equal-time basis in Mooresville.

The children's relationship with Father, step-mother, and step-siblings deteriorated as the children grew older. K.M. in particular believed that they were treated differently in Father's home than the step-children, citing the step-children's ability to play soccer on Sundays, while Father's children were prohibited from doing so because of his desire that the children attend church. Id. at 22-24. D.M. often felt "interrogated" when she talked with Father on the telephone. Id. at 21-22.

The Parenting Coordinator testified that "the problem is not limited to soccer. These folks live—they might as well be living in two states. I mean they are living far apart and for all of the children's activities, whether it's school, the logistics really have become consuming—time consuming problem for both parents to organize, try to reorganize, changes when their schedules change or the kids' change." Tr. p. 13. She also noted that the children were doing their homework in the car and that Father's job requires him to be present for a certain number of hours that creates logistical difficulties regarding his ability to drive to Carmel. Id. at 14. Father wants Mother to deliver the children in Mooresville, and the Parenting Coordinator observed that the transportation issues have been a "logistic nightmare" and the current arrangement is very problematic for the children. Id. at 14-15.

In short, the professionals that the trial court appointed to assist this family observed that the current shared physical custody arrangement was not working for the

children. Tr. p. 15, 19, 56, 65-67, 70. The Parenting Coordinator concluded that the parents' differing parenting styles—Father as more rigid and authoritarian, and Mother as a little more laid back—makes "for a difficult shared co-parenting and joint legal and physical custody" arrangement. Id. at 12.

In our view, the trial court's determination that the parties should remain bound to their shared physical custody arrangement, despite the intervening changes that affect the children's welfare and best interest, cannot stand. The evidence showed that the children are negatively affected by maintaining the current schedule in light of the changes discussed above. Put another way, it is apparent that the trial court did not consider the reasonableness of the original and modified orders in determining the children's best interests; nor did it weigh the children's need for stability against any benefit derived from modified custody.

As a result, we believe that the evidence presented at the hearing established that a modification of custody would be in the children's best interest, and that Mother established that a substantial change had occurred in at least one of the factors set forth in Indiana Code section 31-17-2-8. That said, we conclude that the trial court's refusal to modify the shared physical custody order is prima facie error. Moreover, extensive evidence was presented that the children's best interests compel such a change. Thus, we reverse the judgment of the trial court and remand this cause with instructions that an order be entered based on the evidence presented that modifies the custody arrangement in accordance with the children's best interests.

The judgment of the trial court is reversed and remanded.

FRIEDLANDER, J., and VAIDIK, J., concur.

18