## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 10 2017, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

George Guido
Graly & Guido Law Office, LLC
Fort Wayne, Indiana

Dana Leon
Rockhill Pinnick, LLP
Warsaw, Indiana

ATTORNEYS FOR APPELLEE

T. Andrew Perkins
Rachel A. Arndt
Peterson Waggoner &
Perkins, LLP
Rochester, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.R.H., <br> *Appellant-Petitioner,* <br><br> v. <br><br> O.M.H., <br> *Appellee-Respondent* | August 10, 2017 <br><br> Court of Appeals Case No. 25A03-1611-DR-2534 <br><br> Appeal from the Fulton Circuit Court <br><br> The Honorable A. Christopher Lee, Judge <br><br> Trial Court Cause No. 25C01-1412-DR-738 |

**Baker, Judge.**

[1] J.R.H. (Mother) appeals the trial court's custody order awarding primary physical and legal custody of her children to O.M.H. (Father). Mother raises two arguments on appeal, which we combine and restate as an argument that there is insufficient evidence supporting the trial court's order. Finding the evidence sufficient, we affirm.

## Facts

[2] Father and Mother married in 2003. The union produced three children born in 2006, 2009, and 2011. The marriage gradually broke down and resulted in an acrimonious separation in 2014.

[3] Mother's alcohol consumption and abuse of prescription medications increased dramatically during the marriage. By Mother's own admission, she is a recovering alcoholic. She has stated that at one point she was consuming "a fifth" of vodka every day. Tr. Vol. 2 p. 48. She admitted to drinking while supervising the children, frequently to the point of unconsciousness, and admits that her alcohol consumption hindered her ability to parent.

[4] After the parents separated in 2014, Father often needed to leave his farm to check on the children and make sure they were safe while in Mother's care. One of the children, while participating in play therapy, drew an unprompted picture of Mother passed out, with the child running over to his siblings to take care of them. The therapist testified that this picture indicated that the child had experienced trauma as a result of Mother's substance abuse.

In October 2014, Mother and Father agreed that she should receive treatment for alcohol addiction. Father transported Mother to Fairbanks, an addiction treatment center in Indianapolis, where she was admitted to the inpatient program. After Mother completed the inpatient program in November 2014, Mother relocated to Indianapolis to undergo outpatient treatment through Fairbanks. Mother had very little contact with the children between October 2014, when she began treatment, and May 2015; Father has had physical custody of the children since October 2014. Mother has not consistently exercised all the parenting time to which she is entitled.

Mother alleges that throughout their marriage, Father repeatedly physically abused her. Father denies these allegations and claims Mother was physically violent toward him. He further states that her injuries were caused by falling while she was heavily intoxicated. Neither parent faced criminal charges during the marriage.

Father has stated that he believes Mother is a neglectful parent and he has communicated to her that he does not want the children to have a relationship with her. Unfortunately, the children's relationships with both parents have been strained by the conflict. Nonetheless, the children thrive in school and enjoy living on Father's family farm. They are also strongly bonded to nearby extended family members. Mother admits that the children want to remain with Father.

[8]     While at Fairbanks, Mother engaged in a romantic relationship against treatment recommendations. Her partner was a fellow patient and the relationship resulted in pregnancy. Mother, the child, and the child's father currently live together in Indianapolis. The custody evaluator testified that Mother's decision to become involved in this relationship while in treatment showed "very poor judgment" and having a child soon after leaving treatment, while still married to Father, concerned the evaluator. Tr. Vol. 2 p. 76-77. The Guardian ad Litem noted that the children are not close with Mother's boyfriend, and that the rapid progression of that relationship suggests a lack of stability.

[9]     Mother has found stable employment in Indianapolis but has moved multiple times since completing treatment at Fairbanks. Mother initially lived in a one-bedroom apartment, then a three-bedroom townhome, then another apartment. At the time of the final custody hearing, Mother planned to move to yet another residence in Indianapolis.

[10]    Father filed a petition to dissolve the marriage in December 2014. An evidentiary hearing regarding custody of the children took place on August 23 and 24, 2016. On October 14, 2016, the trial court issued a custody order awarding sole physical and legal custody of the children to Father and ordering that Mother is entitled to unsupervised parenting time in accordance with the Parenting Time Guidelines. The trial court was dismayed by Father's behavior with respect to Mother, but still found that it was in the children's best interests to remain with him:

This should be an easy decision. The children are deeply rooted in and around the Akron community. They are doing well in school. They are living on the family farm. They are surrounded by family and people that have known the family for generations. Ultimately, the Court chose to leave the children with the Father because they are doing well despite their Father's behavior. The Father's immature and abusive behavior towards the Mother makes an otherwise easy decision, difficult. The Father acted like a controlling bully throughout this process. The Court is particularly concerned with some of the Father's communications with the children . . . . This must cease. One of the primary responsibilities of any custodial parent is to encourage and foster the relationship of the non-custodial parent. The Father has done poorly in this regard to date.

The Father is commended, however, because the children have been and are doing well in his care.

The Mother's circumstances are unsettled. Since separation, the Mother entered into a relationship with a recovering addict. Mother now has a child with this individual. The Mother resides in an apartment in Indianapolis but is looking to secure a residence in another location. If the children are placed with Mother, they would begin in a new community, new school, and with new counselor(s). The Court commends the Mother's progress in her substance abuse recovery.

At some point, the advantages afforded the children by residing at the family farm surrounded by relatives and friends may become overwhelmed by the Father's poor behavior—if his poor behavior continues.

Appealed Order p. 7-8. Mother now appeals.

# Discussion and Decision

[11] Mother argues that there is insufficient evidence supporting the trial court's order granting physical and legal custody of the children to Father. We afford trial courts a great deal of deference in family law matters because of their extended face-to-face interactions with the parties. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). Trial judges are able to assess the credibility and character of the parties involved, and, because of this evidence, they are in a superior position to determine the best interests of the children. *Id.* In reviewing a trial court's order in a family law matter, we neither reweigh evidence nor reassess witness credibility, and we view the evidence in the light most favorable to the judgment. *D.C. v. J.A.C.*, 977 N.E.2d 951, 954 (Ind. 2012). We will only reverse the trial court's judgment if it is clearly against the logic and effects of the facts and circumstances. *L.C. v. T.M.*, 996 N.E.2d 403, 407 (Ind. Ct. App. 2013).

[12] A court must award custody in accordance with the best interests of the child. Ind. Code § 31-17-2-8. The trial court must consider all relevant factors, including the following:

    (1) The age and sex of the child.

    (2) The wishes of the child's parent or parents.

    (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

    (4) The interaction and interrelationship of the child with:

> (A) the child's parent or parents;
>
> (B) the child's sibling; and
>
> (C) any other person who may significantly affect the child's best interests.
>
> (5) The child's adjustment to the child's:
>
> (A) home;
>
> (B) school; and
>
> (C) community.
>
> (6) The mental and physical health of all individuals involved.
>
> (7) Evidence of a pattern of domestic or family violence by either parent.
>
> (8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.
>
> (9) A designation in a power of attorney of:
>
> (A) the child's parent; or
>
> (B) a person found to be a de facto custodian of the child.

*Id.* In this case, the trial court noted that it considered all of the above factors but placed "significant weight" on factors four and five. Appealed Order p. 2.

[13] There is a wealth of evidence in the record supporting the trial court's conclusion that primary physical and legal custody should be granted to Father. Among other things, the record reveals the following evidence:

- Before Mother sought treatment for her alcoholism in October 2014, she had become an unsafe parent because of regular, substantial alcohol consumption while the children were in her care.
- Mother had little contact with the children between October 2014 and May 2015, and did not exercise all of the parenting time to which she was entitled.
- In March 2015, Mother became pregnant with the child of her new boyfriend, a man she met while both were in treatment at Fairbanks. She moved in with this man two months later and gave birth to a daughter in December 2015.
- Since finishing treatment at Fairbanks, Mother had lived in three different homes and was planning to move to a fourth at the time of the custody hearing.
- The custody evaluator noted that the two older children "reported enjoying farm life and indicated they would miss certain aspects of country living if they were no longer able to remain in the marital residence. They were not eager to leave friends, extended family, and their schools." Tr. Ex. Vol. 2 p. 114.
- A therapist working with the older two children testified that they enjoy living with Father, have strong family ties in Akron, and are doing well in school. Tr. Vol. 2 p. 201.
- The Guardian ad Litem (GAL) noted that the children all expressed a desire for Father to maintain custody of them. Tr. Ex. Vol. 5 p. 113.
- The GAL expressed concern about Mother's relationship with her new boyfriend, who is also a recovering addict and has prior criminal history related to substance abuse.
- The GAL noted that the children have a good rapport and bond with their current therapist; it was very difficult for the children when they had to switch to a new therapist. If the children were to move to live with Mother, they would need yet another new therapist, and the GAL is concerned about "the effect that continuing to make sudden changes in the lives of these children is having on their mental health." *Id.* at 114-15.
- Through all of Mother's substance abuse and subsequent treatment, Father "took care of the children. He, with a great deal of help from his family members and friends, took care of getting the children to school

and their other events, providing supervision, feeding the children, taking care of them when they were sick, etc. As a result, the children are very closely bonded with their father and his family." *Id.* at 117.

- The GAL ultimately concluded that "it would not be in the best interests of these children for them to be taken out of their father's home and placed in their mother's home in Indianapolis. [Mother], while her reasons may be understandable, chose to move away from her children and make major changes in her life, including moving in with a new boyfriend and having another child. It would not be in the best interests of these children, who are already having to deal with some major changes and upheavals of their own, to force yet another major change on them. Consistency and stability are extremely important for children, and the family, school, and community connections the children have in their father's home provide that consistency and stability to these children. All of the factors weigh in favor of [Father] having physical custody of the children." *Id.* at 118. The GAL also recommended that Father have legal custody of the children. *Id.* at 119.

We find that this evidence supports the trial court's conclusion that, while legitimate concerns have been raised about Father's behavior, it is in the children's best interests to remain with him. They are bonded to him, well adjusted to their community and school, and generally doing well. To uproot them at this time could be detrimental to their well-being. Under these circumstances, we find sufficient evidence supporting the trial court's order.

[14] We acknowledge the evidence in the record tending to support Mother's allegations that Father has been physically abusive to her in the past and emotionally abusive to her during the divorce proceedings. Arguments along these lines, however, amount to a request that we reweigh the evidence and second-guess the trial court's assessment of witness credibility, which we may not do.

[15] Mother correctly states that Father may not "sow the seeds of discord and reap improved custody rights." *Pierce v. Pierce*, 620 N.E.2d 726, 731 (Ind. Ct. App. 1993). However, the trial court awarded custody to Father not because of discord in the family, which Father has undoubtedly exacerbated, but because it determined that Father's home is a stable and familiar environment for children. Indeed, the record indicates that the trial court acknowledged and criticized Father's combative behavior. Nonetheless, the trial court found that it would be in the best interest of the children to award Father custody, and we have found sufficient evidence supporting that conclusion.

[16] In a custody dispute, the trial court's duty is to act in what it deems is the best interest of the children. The trial court determined that it is in the best interest of the children to remain in the home and schools to which they are accustomed. We find sufficient evidence in the record to support the trial court's conclusion. This Court does not sanction any parent's attempt to punish the other parent through their children, and we strongly echo the trial court's caution that Father's manipulative, toxic behavior must cease. We urge him not to interfere with Mother's court-ordered parental access and to adhere strictly to the trial court's order. Nonetheless, we find that the trial court did not err in granting physical and legal custody to Father.

The judgment of the trial court is affirmed.

Mathias, J., and Altice, J., concur.