**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JOHN A. HOVANEC**
Indianapolis, Indiana

APPELLEE PRO SE:

**TABETHA J. EMENAKER**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE: THE PATERNITY OF S.J.E-C: )<br>)<br>CLARENCE CONES, III, )<br>)<br>    Appellant-Respondent, )<br>)<br>       vs. )<br>)<br>S.J.E-C, by next friend: TABETHA J. )<br>EMENAKER, and TABETHA J. EMENAKER, )<br>)<br>    Appellees-Petitioners. ) | No. 49A02-1210-JP-805 |

APPEAL FROM THE MARION CIRCUIT COURT
The Honorable Louis F. Rosenberg, Judge
Marcia J. Ferree, Commissioner
Cause No. 49C01-0309-JP-2585

**July 3, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Respondent, C.C. (Father), appeals the trial court's Order modifying custody of his minor child, S.J.E-C (Child), in favor of Appellee-Petitioner, T.E. (Mother).

We affirm.

## ISSUES

Father raises three issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether the trial court erred in concluding that Father's relocation was not made in good faith, for a legitimate reason, and contrary to the Child's best interests; and

(2) Whether the custody modification was supported by a substantial change in circumstances and was in the Child's best interest.

On cross-appeal, Mother raises one issue, which we restate as: Whether the trial court's Order constitutes a final judgment.

## FACTS AND PROCEDURAL HISTORY

Father and Mother are the parents of the Child, born on September 3, 2003. On September 23, 2008, Mother filed a petition to establish Father's paternity and support. On March 9, 2004, Mother was granted temporary custody, with Father receiving parenting time. On August 30, 2004, Father filed a petition for custody and support. That same day, Father filed a motion for mental examination pursuant to Indiana Trial

Rule 35, which the trial court granted, ordering the parties to participate in an evaluation conducted by Dr. Bart Ferraro (Dr. Ferraro). On December 14, 2004, Dr. Ferraro filed his evaluation with the trial court (2004 Report).

On June 12, 2006, the trial court issued its decree establishing paternity and awarding Father sole legal and physical custody of the Child. The trial court found that there was "no superior resolution in this case" as both parties' lacked credibility, parenting skills, and "have used [Child] as a pawn in their interpersonal disputes." (Appellant's App. pp. 53-4). Attributing "great weight" to the 2004 Report, the trial court found Mother to be "unstable" with regard to "her residences, her relationships, her employment, and her mental health." (Appellant's App. pp. 53-4). In particular, Mother "changed residences numerous times" prior to July 2004; "rushed into marriage […] only to separate two months later;" and "demonstrated erratic and nonsensical behavior" toward Father and the Child's godfather which failed to "reflect good judgment or soundness of mind." (Appellant's App. p. 54). Further, Mother had participated "inconsistently" with her mental health treatment. Mother's relationship with the Child's step-sister, who had "an array of emotional and psychological problems," did "not pave a stable or secure road for [him], and if [the Child] remains in [Mother's] primary care, he appears to be at risk for similar problems." (Appellant's App. p. 54).

Father's custody of the Child also presented concerns for the trial court as he had "been derogatory and hurtful toward [Mother]." (Appellant's App. p. 54). However, the

trial court found Father "far more stable, residentially, financially and emotionally." (Appellant's App. p. 55). As a result, the trial court concluded:

> 9. It is in the [C]hild's best interest for [Father] to have sole legal and physical custody of him. Joint legal custody or shared decision-making is not a viable option, as the [c]ourt has no confidence that the parties will ever get along. However the [c]ourt orders [Father] to confer and consult with [Mother] in reference to major decisions affecting the [C]hild, listen to or review her thoughts, and thereafter, [Father] may make the final decision.

(Appellant's App. p. 55). The trial court ordered a deviation from the Indiana Parenting Time Guidelines and gave Mother additional time subject to reevaluation after the Child entered kindergarten. As a result, the parties essentially shared physical custody of the Child. Father's mother (Grandmother) was approved to provide daycare while Father was at work. Mother was also ordered to engage in "long-term psychotherapy." (Appellant's App. p. 56).

The parties' relationship is best characterized by their acrimonious and hostile actions toward each other. For example, Mother has filed several claims against Father. These include an invasion of privacy criminal complaint against Father in 2005; a protective order against Father for stalking in 2006; allegations of child kidnapping in 2006; reporting Father to Marion County court security in 2007, resulting in a weapons search of Father by eight security officers; a child protective services (CPS) investigation of Father regarding the Child's dental care as well as another CPS claim in 2010; a contempt motion in 2009; and a complaint to Father's employers, triggering an internal investigation. Father or Grandmother have also engaged in a number of hostile actions

4

toward Mother. These include hiring a private investigator in 2009; alleging that Mother abused the Child's step-sister; delivery of a 20-page packet containing inflammatory information to Mother's employer; alleging that Mother carried on a personal relationship with a court-appointed parenting coordinator and a Department of Child Services case manager, as well as unduly influencing the Child's guardian ad litem (GAL); denying Mother access to the Child's school information; and threatening to sue the Child's karate instructor selected by Mother in the event of injury to the Child.

In February 2009, Father informed Mother that he intended for the Child to attend private school and researched schools in Johnson and Morgan Counties. At the time, Father lived in Greenwood, Johnson County and Mother lived in Marion County: a distance of only two to four miles separated them. On July 16, 2009, Mother filed a verified petition for enforcement, alleging that Father had failed to advise her of what school the Child would attend and that enrolling the Child in a Morgan County school would cause Mother hardship getting the Child to school on those days when she exercised her parenting time. As a result, Mother sought to compel Father to enroll the Child in the school district where he resided. Father eventually enrolled the Child in kindergarten at Neil Armstrong Elementary School, a public school in Mooresville, Morgan County. On July 22, 2009, Father filed his petition to dismiss Mother's verified motion of enforcement. Father advised the trial court that he intended to sell his home in Johnson County, move to Morgan County, and would "comply with the [relocation]

notice statute once he completes the sale of his home and acquires a new residence." (Appellant's App. p. 120).

That same day, Father filed a motion requesting an order to direct the parties to submit to custody evaluations, which the trial court granted on July 23, 2009. On February 23, 2010, the trial court received a second custody evaluation by Dr. Ferraro (2010 Report). Dr. Ferraro concluded that Father had prevented Mother from involvement with the Child's school. He observed that Father had somewhat isolated the Child by placing him in a school fifteen miles away from his residence. He also recommended that Grandmother cease acting as the Child's primary caregiver. Noting the "excessive degree" of her involvement, the 2010 Report concluded that Grandmother was "ultimately biased," and had "engaged in slandering [Mother] at times." (Appellant's App. p. 203). The 2010 Report recommended joint legal custody based in large part on Father's "disregard" of Mother's involvement with the Child's schooling and health care and "some deficits in judgment and decision-making." (Appellant's App. p. 204).

On July 13, 2010, Mother filed a verified motion to establish school attendance seeking to remove the Child from Neil Armstrong Elementary School. Mother alleged that attendance at the school was not in the Child's best interests. On August 4, 2010, the trial court held an attorney conference, with both parties in attendance. Father told the trial court that he "is moving to Morgan County on approximately [September 1, 2010)]." (Appellant's App. p. 235). The trial court ordered the Child to continue attending Neil

6

Armstrong Elementary School but if Father failed to move to Morgan County by September 30, 2010, the Child must be enrolled in a school district where Father resides.

On October 27, 2010, the parties participated in mediation. Father told Mother that he was moving from Greenwood to the city of Martinsville in Morgan County and would enroll the Child in the Eminence School District. On October 29, 2010, Mother filed a verified emergency petition objecting to the relocation and change of the Child's school, as well as a verified petition for modification of custody. On November 4, 2010, the trial court held an attorney conference wherein it ordered that Mother's weekday parenting time was to begin after she finishes work, rather than at 6:00 p.m., and that Father would be permitted to enroll the Child in Eminence Elementary School. However, the trial court encouraged "the parties to consider an agreement of the Child attending Neil Armstrong Elementary […] as an effort to co-parent." (Appellant's App. p. 249).

On December 20, 2010, Father filed an emergency petition for modifying parenting time and abatement seeking medical attention. Father alleged that the trial court's alteration of Mother's parenting time resulted in hardship to Father given the distance from his residence to the point where the parties exchanged the Child and that Father required the Grandmother's assistance to transport the Child. Father also alleged that Mother unnecessarily incurred medical expenses which were billed to Father, who had sole legal custody. On January 12, 2011, the trial court ordered Mother to follow Father's decisions regarding healthcare or be held in contempt.

On August 24, 2011, the trial court appointed a parenting coordinator. On November 18, 2011, Father filed a motion for substitution of parenting coordinator based upon his belief that the parenting coordinator was biased. Mother filed a motion to compel Father's attendance and cooperation.

On March 16, 2012 and June 21, 2012, the trial court held hearings on the parties' motions. Both the 2004 and 2010 Reports were entered as evidence. The GAL testified that the parties should share joint legal custody, but "that [Mother] could do a better job" parenting the Child. (Transcript p. 79). He testified that Father made decisions "without consulting with [Mother]." (Tr. p. 65). He found Grandmother too involved, explaining that "[Mother] has to contact [Grandmother] if [Mother] wants to relay a message right away to [Father]" who did not have reliable communication at his home. (Tr. p. 30). Notably, the GAL testified that Father moved "[t]o create a greater distance" between him and Mother, which "had a negative effect" on the Child. (Tr. p. 23). The GAL recommended that while Mother should be reassessed for mental stability and continue treatment, Father should also obtain a mental health assessment.

On September 27, 2012, the trial court issued its Order. Noting that "the fitness and suitability for both [p]arents is a concern for the court" and acknowledging the recommendations for joint legal custody, the trial court found that "the [p]arties' history demonstrates that they are not willing and able to communicate and cooperate in advancing their [C]hild's welfare." (Appellant's App. p. 44). The trial court concluded that the Child "benefits from Mother's input and Father has used the title of legal

custodian to thwart Mother's input." (Appellant's App. p. 45). Further, the trial court concluded that Father's move was not made in good faith, for a legitimate purpose, or in the Child's best interests. The trial court thereafter concluded that modification of custody was in the best interests of the Child and that a substantial change in circumstances had occurred. As a result, the trial court awarded Mother sole legal custody with shared physical custody. It also ordered the parties to select and participate with a parenting coordinator who would assist the parties to determine a school district and provide recommendations on parenting time schedules. The parents were also ordered to complete a parenting program within four months of the Order.

Father now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

CROSS-APPEAL

As a threshold matter, we address Mother's argument that the trial court's Order does not constitute a final judgment and therefore this court does not have jurisdiction to entertain Father's appeal. Specifically, Mother contends that given Father's failure to select a parenting coordinator and without proof that the parties completed parenting classes, the Order did not dispose of all pending issues and therefore does not constitute a final judgment.

Pursuant to Ind. Appellate Rule 5(A), this court has jurisdiction over final judgments. A final judgment is one that disposes of all claims of all parties. App. R. 2(H). However, in this case all matters necessary to render the trial court's Order final

9

have occurred. Before the trial court were Mother's petition for custody modification and objection to the relocation and to change the Child's school. Mother also sought to compel Father's participation with the parent coordinator, but Father filed a motion for substitution of parenting coordinator. Father also sought a reduction of Mother's parenting time. The Order resolved these issues by 1) awarding Mother sole legal custody; 2) awarding both parties shared physical custody; and 3) granting Father's motion to substitute the parenting coordinator. The Child was ordered to remain at Eminence Elementary School until Spring 2013, when the Child "shall attend a school in a closer district to be determined with the assistance of the [p]arenting [c]oordinator." (Appellant's App. p. 46). There is no issue left for future determination by the court and the Order is a final judgment.

APPEAL

I. *Standard of Review*

The trial court's Order adjudicated both Mother's motion to prevent the Child's relocation and her petition for modification of custody, finding in Mother's favor on both issues. "Trial courts are afforded a great deal of deference in family law matters, including relocation and custody disputes." *D.C. v. J.A.C.*, 977 N.E.2d 951, 957 (Ind. 2012). Here, the trial court made specific findings of fact and conclusions of law in its Order preventing the Child's relocation and modifying custody. We will not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *Id.* at 953.

10

Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *See id.* An appellate court neither reweighs the evidence nor reassesses witness credibility, and it views evidence most favorably to the judgment. *Id*. at 954.

Further, when reviewing a custody determination, we afford the trial court considerable deference as it is the trial court that observes the parties' conduct and demeanor and hears their testimonies. *Kondamuri v. Kondamuri*, 852 N.E.2d 939, 945-46 (Ind. Ct. App. 2006). Thus, we review custody modifications for an abuse of discretion "with a preference for granting latitude and deference to our trial [courts] in family law matters." *Werner v. Werner*, 946 N.E.2d 1233, 1244 (Ind. Ct. App. 2011), *trans. denied*. We will reverse the trial court's custody determination only if it is clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom. *Kondamuri*, 852 N.E.2d at 946.

Moreover, judgments in custody matters will typically turn on essentially factual determinations. *Baxendale v. Raich*, 878 N.E.2d 1252, 1257 (Ind. 2008). We will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. *Id*. at 1257-258. It is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002).

II. *Motion to Prevent Relocation*

Father first challenges the trial court's determination that his relocation was not made in good faith and for a legitimate reason. Father also challenges the trial court's determination that the relocation was not in the Child's best interests. In either case, Father argues that the evidence does not support the trial court's findings.

Indiana Code § 31-17-2.2-5 governs motions to prevent relocation of a child. The relocating parent first must establish that the relocation is being made in good faith and for a legitimate reason. *See* I.C. § 31-17-2.2-5(c). If the relocating parent satisfies that burden, the burden shifts to the non-relocating parent to show that the proposed relocation is not in the best interests of the child. *See* I.C. § 31-17-2.2-5(d).

Father argues that the trial court unjustifiably inferred that he moved to impose greater distance between himself and Mother. He testified that he wanted to live in the county and made several offers on homes "over the years reflecting his long time desire to live there." (Appellant's Br. p. 23). He points to his work as a volunteer sheriff's deputy in Morgan County and argues that his residence is a negligible additional distance from Indianapolis International Airport, where he is employed as a U.S. Customs Officer. Further, he insists that he wanted to enroll the Child in a better school district than that in Greenwood.

In concluding that Father's move was not made in good faith and lacked a legitimate reason, the trial court made several findings in support. First, the trial court reviewed Father's actions leading up to the relocation. In particular, "Father failed to comply with the Indiana Relocation Statute." (Appellant's App. p. 39). A relocating

12

parent must file a notice of intent to relocate and send a copy of the notice to any nonrelocating parent. I.C. § 31-17-2.2-1(a). The record reflects that although promising to do so at the August 4, 2010 attorney conference, Father did not file a notice of relocation. In addition, the trial court found that at the August 4, 2010 attorney conference, Father had already enrolled the Child at Neil Armstrong Elementary in Mooresville despite residing in Greenwood. Although permitting him to keep Child enrolled at the Neil Armstrong Elementary School, the trial court ordered Father to enroll the Child in a school district where he resided if Father had not moved by September 30, 2010. Father had not moved by September 30, 2010 and the record shows that Father neither moved to Mooresville "nor did he enroll the [Child] where he was living." (Appellant's App. p. 40).

Next, the trial court relied on the distance of Father's relocation. Father moved 25 miles west of Mooresville to a farm located at the southwestern edge of Morgan County. "His move created significant distance" because of the 30 mile and 45 minute distance from Mother's residence. (Appellant's App. p. 40). This finding is also supported by the record, which includes both Mother and Father's testimony on the specific distances involved.

Notably, the trial court accepted the opinion of the GAL, who concluded that Father's relocation "is believed to be deliberate in a way to create a wider barrier to allow [Mother] to co-parent." (Appellant's App. p. 263). Testimony established that Father's relocation represented a greater distance from Father's primary work and necessitated

13

substantial involvement by Grandmother, who moved to Father's house during the week to care for the Child. This resulted in "a stressful situation" for Father as "it forced him to rely more on his elderly mother to not only provide much of the child care for [the Child]." (Appellant's App. p. 263). Based on the foregoing, we conclude that the evidence supports the trial court's findings and conclusion that Father's relocation was not made in good faith nor for a legitimate reason.

Notwithstanding Father's failure to satisfy his burden, the trial court also found that the relocation was not in the Child's best interests because the distance between Father and Mother's homes impacted parenting time exchanges and increased the time required for Child to rise and prepare for school. The trial court noted that the "close proximity" between Mother's residence and Father's prior residence in Greenwood "afforded [the Child] a routine of being frequently and consistently cared for [by] both of his [p]arents." (Appellant's App. p. 39). However, Father's move "made parenting time exchanges more difficult, has meant significantly more time on the road for [the Child] and has forced [the Child] to awake for school much earlier when at Mother's for [her] parenting time." (Appellant's App. p. 39). Based on the record before us, we do not find clear error and therefore affirm the trial court.

### III. *Modification of Legal Custody*

Father also challenges the trial court's Order awarding Mother sole legal and shared physical custody. As Father was initially awarded sole legal and primary physical custody, Mother had the burden of proof that "the existing custody arrangement should

14

be altered." *Webb v. Webb*, 868 N.E.2d 589, 592 (Ind. Ct. App. 2007).[1] Mother alleged that a substantial change of circumstances rendered Father's custody contrary to the Child's best interests based upon "changes to the [C]hild's relationship with family and school; Father's inability to provide proper healthcare; and the Father's inability to communicate and cooperate with Mother in parenting the [C]hild." (Appellant's App. p. 248).

## A. *Substantial Change in Circumstances*

Modifications of custody subsequent to a paternity determination are to be made according to I.C. § 31-14-13-6, which provides that a child custody order may not be modified unless modification is in the best interests of the child and there is a substantial change of circumstances in one or more of the factors that a court may consider under I.C. § 31-14-13-2. Those statutory factors are:

(1) The age and sex of the child.
(2) The wishes of the child's parents.
(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:
    (A) the child's parents;
    (B) the child's siblings; and
    (C) any other person who may significantly affect the child's best interest.
(5) The child's adjustment to home, school, and community.
(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.

---

[1] In essentially arguing that initial custody determinations are entitled to deference, we note that Father's appellate brief cites to an unpublished memorandum decision from this court. "Unless later designated for publication, a not-for-publication memorandum decision shall not be regarded as precedent and shall not be cited to any court except by the parties to the case to establish *res judicata*, collateral estoppel, or law of the case." App. R. 65(D).

(8) Evidence that the child has been cared for by a [*de facto*] custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

Father argues that the trial court's Order is clearly erroneous because there was no evidence that the factors identified by the trial court in the 2006 initial custody determination had changed. However, the trial court considered all statutory factors under I.C. § 31-14-13-2, specifically citing factors (1), (4), (5), and (6), to conclude that a substantial change in circumstances had occurred. The trial court found that six years had passed since the 2006 custody determination; the Child was now eight years old and had begun formal education. Next, it considered the interaction and interrelationship of the parties involved. It noted that the Child had a "close relationship with both parents" and was "comfortable" when residing with either parent. (Appellant's App. p. 41). However, the Child was "aware of the continued conflict relationship" between the parents "and he copes by trying to please them both." (Appellant's App. p. 41). Regarding his step-sister, the trial court found that they shared a "close bond and enjoy their time together." (Appellant's App. p. 42). The trial court also considered the interrelationship of the Child with the Grandmother. It found that Grandmother had played too much of a role as the Child's caretaker and had undertaken to discredit Mother by sending her employer potentially damaging information to her career. Grandmother's involvement resulted in the GAL's recommendation for "another caretaker" because it "contributes to the highly conflictual relationship between Father and Mother."

(Appellant's App. p. 42). Father presents no argument on these findings, which are amply supported by evidence in the record.

Father's primary argument on appeal addresses whether there was evidence that Mother increased her stability with her mental health as well as her relationships, residences, and employment. Father argues that Mother's "mental stability has not improved" given her "extreme behavior" as exhibited by the eight allegations she has filed against Father, her seeking of arguably "unnecessary emergency care for the Child, and her failure to abide by the trial court's order for psychotherapy." (Appellant's Br. p. 17). Father also argues that Mother has continued in unstable romantic relationships given her two marriages since the Child's birth and numerous changes of residence.

The trial court found that although Mother had failed to obtain long term psychotherapy, that her stability continued to be a concern, and that she had "engaged in some immature behavior" since 2006, she had not "engaged in behavior that has detrimentally affected" the Child, and had "generally demonstrated sound judgment in looking after the Child's best interests." (Appellant's App. p. 43). Further, Mother had "exercised control and patience in resolving her objection to Father's relocation through the justice system" and was "considered by her employer as dependable, and as having exercised good judgment in stressful and non stressful situations." (Appellant's App. p. 42).

Furthermore, although not a concern in 2006, the trial court found that Father had committed a number of hostile acts, including accusations against the parenting

17

coordinator and GAL regarding bias toward Mother, threatening to sue the Child's karate teacher, and denying Mother access to the Child's school records, while allowing Grandmother "greater access to [C]hild and school and health information than he has Mother." Father attempts to pass these off as isolated acts; however, given the parties' hostile relationship and history of internecine warfare, we decline to accept Father's characterization. Thus, we conclude that the trial court's findings on a substantial change in circumstances are not clearly erroneous

### B. *Best Interest of the Child*

Regarding the Child's best interests, the trial court considered the Child's dental health and education. It concluded that "Father as sole custodian has not acted in [the C]hild's best interest where education and dental health is concerned." (Appellant's App. p. 45). In support, the trial court found that Father neglected to take him to the dentist, ignored Mother's "legitimate inquires" regarding the Child's dental health, and that Mother later took the Child to a dentist "where he was treated for six cavities." (Appellant's App. p. 45). Father argues that these findings are unsupported because he took the Child for dental visits and although the Child had six cavities, only one cavity was filled. Further, the dentist opined that the amount of the Child's cavities was consistent with his age. Apart from the erroneous finding that the Child was actually treated for six cavities, the record contains evidence that the Father delayed seeking initial dental treatment for the Child until he was six years old, had opted not to treat all the Child's cavities, that another dentist found that the Child had a tooth protruding into

his sinuses, and that Father's seeking of dental care was in some part prompted by Mother's complaints. We therefore decline to find an abuse of discretion on this ground.

With respect to Father's decisions on the Child's education and extracurricular activities, the trial court found that they were "guided by his desire to live in Morgan County and a desire to impose distance between Mother and [the Child] rather than [the Child's] best interests and needs." (Appellant's App. p. 45). Although Father claimed that Mother's school district was inferior, the record contains evidence that the Child's placement in Eminence Elementary School was brought about solely by Father's move to that school district rather than the superiority of that particular school district. We therefore find no abuse of discretion.

Most importantly, the trial court's Order recognizes that the parties are unable to co-parent, in spite of the GAL and 2010 Report's recommendations. This hostility forced the trial court to reluctantly choose one parent over another. The trial court found that Father excluded Mother from decisions regarding the Child; held out that he was the custodial parent to the detriment of Mother's need for information regarding the Child, legitimate or otherwise; "raised false and degrading allegations against Mother;" and spoke unnecessarily with "healthcare provide[r]s as well as school personnel about Mother in a negative and inflammatory fashion and has used the language of the [2006] custody order to bolster his attack." (Appellant's App. p. 45). Because the trial court did not "have any basis to believe such decision and acts by Father will not continue if he continues to have sole legal custody," the trial court awarded Mother sole legal custody

and the parties shared legal custody. (Appellant's App. p. 45). The trial court did not abuse its discretion and we affirm the trial court's Order.

CONCLUSION

Based upon the foregoing, we conclude that the Order constitutes a final judgment. Further, the trial court did not abuse its discretion by sustaining Mother's opposition to Father's relocation. Finally, we conclude that the trial court's award to Mother of sole legal custody and shared physical custody is not clearly erroneous.

Affirmed.

BRADFORD, J. and BROWN, J. concur