## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 03 2015, 10:45 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Donald E. James
Don James & Associates, LLC
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

James C. Yankosky
Angelica N. Fuelling
Tourkow, Crell, Rosenblatt, & Johnston, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re The Paternity of K.R.K.

K.O.
*Appellant-Defendant,*

v.

R.H.K.,
*Appellee-Plaintiff*

June 3, 2015

Court of Appeals Case No. 02A03-1408-JP-274

Appeal from the Allen Superior Court

The Honorable Daniel G. Heath, Judge

Cause No. 02D07-1001-JP-8

**Friedlander, Judge.**

[1]     K.O. (Mother) appeals from the denial of her petition to relocate, presenting the following consolidated, restated issue on appeal: Did the trial court commit

clear error in finding that relocation of K.R.K. (Child) was not in Child's best interest?

[2]     We affirm.

[3]     Mother and R.K. (Father) are the biological parents of Child, who was born in 2008. Father's paternity was established in Allen Superior Court on April 8, 2010. Mother also has a daughter who is approximately two years older than Child. Father believed that he was the biological father of the older child until paternity tests in 2010 proved otherwise. After tests confirmed that Father was the biological parent of Child, Father was granted parenting time pursuant to the Indiana Parenting Time Guidelines (the Guidelines). Father exercised parenting time with Child every other weekend and on Wednesday evenings. In addition, Father exercised parenting time with Child half of each summer, on alternating spring breaks, and on alternating holidays.

[4]     Mother and Timothy Oxendine met in the summer of 2012. Although Oxendine had been a resident of Fort Wayne since 1989, his extended family lived in Calvin, Kentucky. On October 14, 2012, Oxendine suffered a heart attack. He was advised in March 2013 that he would need a defibrillator to improve his heart rate and rhythm. On May 31, 2013, Mother and Oxendine married. On August 21, 2013, Mother filed a notice of her intent to relocate with Child from Ossian, Indiana to Calvin, Kentucky. At the time, all of Child's biological family lived within a sixty-mile radius of Ossian. In the notice, Mother asserted that she wanted to relocate for the following reasons:

> [M]y husband and myself are disabled and will not be returning to work. We would like to relocate to be closer to grandparents. We will be moving into the holler, where it is quiet and away from the city. We want to be out of the city, out of our trailer, and away from Fort Wayne. It seems as though the gangs, drugs, shootings, and homicides are getting worse and out of control. I don't want my children raised around that. I also don't want them to be afraid to leave the house. I want them to be able to go outside and play and [sic] their own front yard.

*Appellant's Appendix* at 82.

[5] On December 20, 2013, Mother filed a "letter in addendum", providing further rationale for relocation. *Id.* at 83. Referring to the original notice, she apologized for making "it sound as though Fort Wayne, IN was an awful place to live." *Id.* She then expanded upon the reasons for relocating, including: 1) they would be closer to Mother's mother[1] and Oxendine's father, with whom Child shared close relationships; 2) the family would benefit financially because they would pay no rent or house payment as a result of the fact that the home into which they would move was owned by Oxendine's extended family; 3) Child would be involved in the church in which his step-father was raised; and 4) Child would benefit by not being separated from his half-sister and step-father, with whom he shared close relationships.

[6] Oxendine's employer-provided health insurance in Indiana would not cover the cost of the procedure to implant a defibrillator. Also, according to Oxendine,

---

[1] Mother's mother planned to relocate to Kentucky when Mother did.

he was not eligible for Medicaid in Indiana. Oxendine learned, however, that if he were a resident of Kentucky, he would be eligible for "Kentucky Medicaid". *Transcript* at 60. He traveled to Kentucky on December 21, 2013, for the purpose of having a defibrillator implanted. On December 22, 2013, before a defibrillator was implanted, Oxendine suffered a second heart attack. At the time of the final hearing in this matter, Oxendine received $1474 per month in Social Security Disability (SSD) benefits. In addition, he was told by a Social Security office in Kentucky that each child living with him in Kentucky would receive a $386 monthly SSD benefit. In addition to Child and Child's half-sister, Oxendine had two of his biological children living with him. At the time of the final hearing, Oxendine had not yet received a defibrillator.

[7] Father opposed the motion to relocate, and, in addition, filed a motion for change of custody. A hearing was conducted on February 21, 2014, and continued to February 26, 2014. It was at this hearing that Mother indicated for the first time that one reason for the relocation was to enable Oxendine to qualify for medical benefits that were ostensibly unavailable to him in Indiana. Following the hearing, the trial court entered impressively thorough findings of fact and conclusions of law. After finding that Mother had met her burden of proof by a preponderance of the evidence to demonstrate that the request for relocation was made in good faith and for legitimate reasons, the court nonetheless determined that relocation was not in the best interest of Child, entering the following Conclusions of Law in support of its ruling:

6.	Although the transportation expense would create some hardship for [Mother], the transportation drive time could create some hardship for [Father]. On the other hand, the same would be true if [Father] were granted custody of [Child].

7.	[Mother's] "best interest" evidence and arguments focused on [Child's] family – and not [Child] specifically. However, [Father's] "best interest" evidence and arguments regarding county poverty and high school comparisons were of limited value.

8.	The Court weighs heavily that [Father] has been a father involved in every facet of [Child's] life and [Father] has exercised his opportunities for parenting time pursuant to the Indiana Parenting Time Guidelines (without distance as a major factor), except for National Guard service, and has provided regular financial support for [Child].

9.	Imposing the Indiana Parenting Time Guidelines (with distance as a major factor) would curtail approximately thirty-five (35) standard overnight parenting time periods plus any additional parenting time as agreed by the parties between [Father] and [Child].

10.	Given the totality of circumstances in this case, the Court could not find that diminishing [Father's] parenting time with [Child] was in [Child's] best interest.

*Appellant's Appendix* at 29. The trial court also denied Father's petition for change of custody. Mother appeals the denial of her petition to relocate.

[8]	Where the trial court enters special findings of fact and conclusions pursuant to Trial Rule 52(A), we apply a two-tiered standard of review. *In re Paternity of C.S.,* 964 N.E.2d 879 (Ind. Ct. App. 2012), *trans. denied.* First, we consider whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* The trial court's findings and conclusions will be set

aside only if they are clearly erroneous—that is, where a review of the record leaves us with a firm conviction that a mistake has been made. *In re Paternity of D.T.,* 6 N.E.3d 471 (Ind. Ct. App. 2014). In conducting our review, we will neither reweigh the evidence nor judge the credibility of witnesses. *Id.* In addition, we will consider only the evidence favorable to the trial court's judgment. *Id.*

[9] When a parent files a notice of intent to relocate, the nonrelocating parent may object by moving to modify custody or to prevent the child's relocation. Ind. Code Ann. § 31–17–2.2–1 (West, Westlaw current with legislation of the 2015 First Regular Session of the 119th General Assembly effective through April 23, 2015); I.C. § 31–17–2.2–5 (West, Westlaw current with legislation of the 2015 First Regular Session of the 119th General Assembly effective through April 23, 2015). Father did both. Where the nonrelocating parent files a motion to prevent relocation, the relocating parent must first prove "that the proposed relocation is made in good faith and for a legitimate reason." I.C. § 31–17–2.2–5(c). If the relocating parent makes such a showing, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." I.C. § 31–17–2.2–5(d).

[10] The trial court found that Mother had satisfied her burden of proving that her request for relocation was made in good faith and for a legitimate purpose; Father does not challenge that finding. Mother contests the trial court's subsequent determination that Father satisfied his burden of establishing that the proposed relocation was not in Child's best interest.

[11]    In considering a proposed relocation, a trial court must weigh several factors, including the distance involved in the proposed relocation, the hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation, "[t]he feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties", and "[o]ther factors affecting the best interest of the child." I.C. § 31–17–2.2–1(b)(1), (2), (3) and (6), respectively; *see also D.C. v. J.A.C.,* 977 N.E.2d 951 (Ind. 2012). "The '[o]ther factors affecting the best interest of the child' include, by implication, the factors set forth for custody determinations and modifications under Indiana Code section 31–17–2–8." *T.L. v. J.L.,* 950 N.E.2d 779, 785 (Ind. Ct. App. 2011) (alteration in original). I.C. § 31–17–2–8 (West, Westlaw current with legislation of the 2015 First Regular Session of the 119th General Assembly effective through April 23, 2015) provides that the court "shall consider all relevant factors," including, among others, the child's age and sex, the child's parents' wishes, the child's wishes (with more consideration given to the wishes of a child who is at least fourteen years of age), the child's interaction and interrelationship with his or her parents, siblings, and any other persons who may significantly affect the child's best interests, and the child's adjustment to home, school and community.

[12]    In finding that relocation was not in Child's best interest, the trial court found that, except when he was deployed in the National Guard 2011, Father has

been "involved in every facet of Child's life." *Appellant's Appendix* at 29. Father exercises his mid-week parenting time unless his work duties interfere, and also exercises his alternate holidays and one-half summer parenting time. The court found that Father's parenting time would be curtailed by Mother's relocation with Child to an area approximately 378 miles away. From that distance, Father would not be able to monitor Child's school activities except by computer and phone. Moreover, Father would not be able to participate in person in Child's sports activities during the school year, although he would be able to participate in Child's summer sports activities. The trial court also found that Child has close and loving relationships with both sides of his extended family, including Father's, and his contact with Father's extended family would be significantly reduced if Child relocated to Kentucky. These findings are supported by the evidence and thus not clearly erroneous. Based largely upon these findings, the trial court found that relocation was not in Child's best interest.

[13] Mother's arguments on appeal center upon the benefits of relocation to her household, of which Child obviously is currently a member. For instance, she notes that the medical treatment that Oxendine needs, which costs $160,000-$185,000, is covered by insurance if he is a Kentucky resident, but is not covered if he lives in Indiana. She notes also that the family can live rent-free in Kentucky in a house, which would not be the case were they to remain in Indiana, where they live in a mobile home. Mother also points out that the

family's combined monthly income, including dependent care SSD income, would be approximately twenty-five percent higher in Kentucky than Indiana.

[14] We are not inclined to dispute Mother's claim that her family, and by extension Child, would benefit in certain ways if she was permitted to relocate Child to Kentucky. We cannot, however, reverse a trial court's determination concerning a relocation petition merely because the evidence might support a different determination. Instead, the evidence "must positively require" the result sought by the appellant. *D.C. v. J.A.C.,* 977 N.E.2d at 957. As our Supreme Court has explained, appellate deference to trial court judges is especially appropriate in domestic relations matters because of their "unique, direct interactions with the parties face-to-face, often over an extended period of time." *Id.* at 956 (quoting *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011)).

[15] So it is here. There is evidence to support the trial court's findings relative to the negative impact that relocation to Kentucky would have with respect to Child's contact and interaction with Father and Father's extended family. Mother's arguments on appeal essentially are that these negatives are outweighed by the aforementioned benefits of relocation to Child and Mother's family. This is tantamount to a request that we reweigh the evidence and reach a conclusion opposite to the trial court's. Our Supreme Court made it clear in *D.C. v. J.A.C.* that we cannot do this. Because there is evidence supporting the trial court's finding that the requested relocation is not in Child's best interests, we will not disturb its judgment on appeal.

Judgment affirmed.

Baker, J., and Najam, J., concur.