## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 22 2015, 10:22 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Ryan H. Cassman
Cathy M. Brownson
COOTS, HENKE & WHEELER, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Leanna Weissmann
Lawrenceburg, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

P. J. K.

*Appellant-Petitioner,*

v.

L. M. K.,

*Appellee-Respondent*

September 22, 2015

Court of Appeals Case No.
29A04-1412-DR-595

Appeal from the Hamilton
Superior Court

The Honorable Steven R. Nation,
Judge

Trial Court Cause No.
29D01-1008-DR-979

**Friedlander, Senior Judge.**

[1] Since their dissolution of marriage in 2012, P.J.K. (Father) and L.M.K (Mother) have shared joint legal and physical custody of their daughters, alternating weekly parenting time in and near Dillsboro, Indiana. About a year

later, Father filed a notice of intent to relocate to Noblesville, Indiana, along with a motion to modify custody. Mother objected to the request to relocate and filed her own motion to modify custody. Following a two-day evidentiary hearing, the trial court granted Mother's motion to modify custody and awarded primary physical custody to Mother. Father presents the following consolidated and restated issues on appeal:

1.      Was the trial court's decision to grant primary physical custody to Mother clearly erroneous?

2.      Is the parenting time award contrary to the trial court's specific findings?

We affirm.

Mother and Father married in 1994 and had three daughters during their marriage, N.K., A.K., and R.K.[1] The couple separated in May 2010, and Mother moved the girls from Noblesville back to her hometown of Dillsboro. Mother moved in with her parents, and Father eventually followed, moving in with his parents in a town near Dillsboro. Mother and Father shared custody of the children on alternating weeks. The children excelled in school in Dillsboro, participated in sports, and benefitted from a "strong network of support", including friends and extended family. *Appellant's Appendix* at 38.

---

[1] The daughters were born in 2001, 2004, and 2005, respectively.

[4]     The marriage was dissolved in April 2012, and the trial court continued the shared custody arrangement. On February 13, 2013, Father sent an email to Mother indicating his intent to move back to Noblesville. He encouraged Mother to also relocate but indicated that if she was unwilling or unable to move, he would like primary custody of the children. Mother responded that she did not believe moving would be in their best interests.

[5]     On April 15, 2013, Father filed a Verified Notice of Intent to Relocate and Petition to Modify Custody, Parenting Time and Child Support. Specifically, Father sought primary physical custody of the children in Noblesville. Mother objected and filed for modification of custody given Father's intended move of about 105 miles away. Like Father, Mother requested primary physical custody because the existing joint custody and equal parenting time arrangement would be unreasonable following Father's move.

[6]     Following a custody evaluation, the court held an evidentiary hearing on July 14 and September 8, 2014. Both parties presented considerable evidence in support of their competing motions to modify custody in light of Father's relocation. On December 4, 2014, the trial court entered a lengthy modification order awarding primary physical custody to Mother. With respect to parenting time, the court ordered: "Father's parenting time shall be by agreement of the parties, but not less than that which is set forth in the Indiana Parenting Time Guidelines. The Court does not find that distance should be a factor in determining Father's parenting time according to the guidelines." *Id.* at 25. Father appeals from this order.

In this case, the trial court entered specific findings of fact and conclusions of law in its order modifying custody. Accordingly, we will not set aside the findings or judgment unless clearly erroneous, and we will give due regard to the opportunity of the trial court to judge the credibility of the witnesses. *D.C. v. J.A.C.*, 977 N.E.2d 951 (Ind. 2012). In other words, it is not enough that the evidence might support some other conclusion, as reversal is warranted only if the evidence positively requires the conclusion contended by the appellant. *Id.*

Findings are clearly erroneous only when the record contains no facts to support the findings either directly or by inference. *Id.* We will neither reweigh the evidence nor reassess witness credibility, and all evidence will be viewed in a light most favorable to the judgment. *Id.*

Our Supreme Court has emphasized the "considerable deference" afforded trial courts in family law matters. *Id.* at 953. Appellate deference is particularly warranted in these matters due to the trial court's "unique, direct interactions with the parties face-to-face, often over an extended period of time." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). "[E]nabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children." *Id.*

1.

There are two ways for a nonrelocating parent to object to a proposed relocation: a motion to modify a custody order under Ind. Code Ann. § 31–17–2.2–l(b) (West, Westlaw current with all 2015 1st Regular Session of the 119th General Assembly legislation) and a motion to prevent the relocation of a child under I.C. § 31–17–2.2–5(a) (West, Westlaw current with all 2015 1st Regular Session of the 119th General Assembly legislation). *Baxendale v. Raich*, 878 N.E.2d 1252 (Ind. 2008). Mother filed both. Regardless of the procedural vehicle employed, however, when a relocation is made in good faith, as in this case,[2] the analysis ultimately turns on the best interests of the children. *Id.*

When custody modification is sought as the result of a relocation, the trial court is required to take into account the following factors:

> (1) The distance involved in the proposed change of residence.

> (2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

> (3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

> (4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating

---

[2] The trial court concluded that Father's proposed relocation was made in good faith and for a legitimate purpose.

individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

(A) relocating individual for seeking relocation; and

(B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

I.C. § 31–17–2.2–1(b).

"Other factors affecting the best interest of the child" include, among other things, the child's age and sex; the parents' wishes; the child's wishes, with the wishes of children fourteen years or older being given more weight; the child's relationship with parents, siblings, and any other person affecting the child's best interests; and the child's adjustment to home, school, and the community.

*D.C. v. J.A.C.*, 977 N.E.2d at 954 (citing I.C. § 31-17-2-8) (West, Westlaw current with all 2015 1st Regular Session of the 119th General Assembly legislation)).

[12] Father argues that certain of the trial court's findings of fact are clearly erroneous, specifically challenging findings number 7, 30, and 38. He argues that each of these alleged errors affected the judgment against him.

[13] Finding number 7 states:

> The analysis of the facts and circumstances by the Court, as well as the opinion of John Ehrmann, Jr., Psy.D., in his custody evaluation, indicate that the best scenario for the children would be to spend as close to equal time with both parents, and for the parties to reside in the same city or region such that equal parenting time would be practicable. That is not, unfortunately, the reality of this situation, and the Court must determine what is in the best interests of the children given the present realities.

*Appellant's Appendix* at 15.

[14] Dr. Ehrmann testified at the custody hearing: "My preference if I could wave my magic wand would be to have [Mother] very close and very active and equally a participant. I wish that were possible." *Transcript* at 287. He later testified: "I've endorsed hypothetically if we had them in the same community equal time." *Id.* at 299. He opined further that if Mother and Father "lived in the same community or within reasonable proximity", the children would want to continue the joint physical custody arrangement. *Id.* Finally, Dr. Ehrmann agreed with Mother's counsel that "the ideal situation is for the parties to live in the same community and share joint custody physical and legal". *Id.* at 300. Finding number 7 was amply supported by the evidence.

[15] Father also challenges finding number 30, which provides:

> While the Court does not find that Father has failed to abide by the statutory requirements for a notice of intent to relocate, Mother first learned of Father's proposed move from the children. Likewise, Mother learned of Father's fiancée, and of Father's marriage, from the children. On these most fundamental aspects of raising children—who will be raising

them, and where they will live (even part time)—Father elected
to share this information with the children and to exclude their
Mother.

*Appellant's Appendix* at 20. Father challenges only part of this finding, claiming
that no evidence was presented that Mother found out about Father's planned
relocation from the children.

[16] Although this portion of the finding was technically erroneous, there was
evidence that Father might have spoken with the children about the move
before informing Mother and that he asked the children their wishes without
discussing it with Mother first. This, as well as the other portion of the finding
not challenged by Father (i.e., that Mother learned of Father's fiancée and
marriage from the children), support the court's ultimate finding that Father
had a propensity to share important information with the children and to
inappropriately exclude Mother.

[17] Finally, Father challenges finding number 38:

The Court finds the age of the children, and the fact that they are
all female, to be significant. Mother should play a significant
role in the children's lives, and should have a significant physical
presence there as well.

*Id.* at 22.

[18] The trial court can, and in fact must, take into account the age and sex of each
child, which is a best interest factor listed in I.C. § 31-17-2-8(1). Here, the
evidence established the ages of the girls, and there was also evidence presented

that R.K. had recently entered puberty. The trial court's finding in this regard is not clearly erroneous.

[19] In addition to challenging three of the findings of the trial court, Father argues that Mother did not meet her burden of proving relocation was not in the children's best interests. Father's argument, however, misses the mark. This is not a situation in which he had primary physical custody of the children and sought to relocate. Rather, the parties shared joint physical custody, which became impossible and against the best interests of the children upon Father's relocation. Neither party disputed that the custody order had to be modified and, indeed, both parties sought modification as a result of the relocation. Consequently, the trial court was compelled to consider the totality of the evidence to determine which parent was in a better position to serve the children's best interests as custodial parent. This was the burden each parent bore in presenting his or her evidence.

[20] Our review of the record shows that the children are fortunate to have two loving, responsible, and capable parents, as well as a step-mother with similar qualities. The trial court's detailed findings, which we will not recount here, reveal a thorough analysis of the best interest factors with respect to each parent. Ultimately, the trial court concluded: "While there are factors that weigh in favor of Father, and other factors that weigh in favor of Mother, the Court finds that Father's deception and lack of communication with Mother on

basic co-parenting issues tips the balance of such factors substantially in Mother's favor."[3] *Appellant's Appendix* at 42.

[21] We cannot conclude, consistent with the applicable clear-error standard, that there are no facts to support the trial court's judgment either directly or by inference. Reaching a different conclusion from that of the trial court in this case would require reweighing the evidence, which we may not do. Applying the highly deferential standard of review, we affirm the trial court's award of primary custody to Mother.

2.

[22] Father also challenges the trial court's award of parenting time. With respect to parenting time, the trial court concluded: "Father's parenting time shall be by agreement of the parties, but not less than that which is set forth in the Indiana Parenting Time Guidelines. The Court does not find that distance should be a

---

[3] In addition to finding number 30 addressed above, the trial court made the following findings regarding Father's deception and lack of communication:

27. In his communications towards Mother, however, Father has been dishonest and refused to communicate effectively with Mother on both major and minor co-parenting issues, such as whether or not he gave appropriate medication to the children, failing to tell Mother about an out-of-state vacation with the children, even instructing the children not to tell Mother about the vacation, and failing to communicate with Mother with regard to his marital status.

28. Father also misapplied the spring break provision of the 2013 guidelines last year, resulting in Mother missing her scheduled time.

29. While the Court cannot find that Father has interfered with Mother's communications with the children, or that Father has disparaged Mother in the presence of the children, the Court finds that communications between Mother and Father are not great. In particular, the Court finds that Father has refused to communicate with Mother on very basic items which hold tremendous importance in the lives of the children and the parties.

*Id.* at 36-37. Father does not challenge these findings.

factor in determining Father's parenting time according to the guidelines." Id. at 44.

[23] Section II(D) of the Guidelines provides for regular parenting time on alternating weekends and one midweek visit for a period of up to four hours, as well as all scheduled holidays. Section III, however, applies when distance is a *major* factor (i.e., where there is a "significant geographical distance") affecting regular parenting time. In these circumstances, the commentary suggests a substantially increased amount of extended parenting time during summer vacation, as well as parenting time during the entire spring break each year.

[24] In arguing that Section III of the Guidelines should apply, Father directs us to the trial court's finding that the distance in this case, approximately 105 miles,

> would cause significant hardship for a non-custodial parent to exercise regular parenting time during the week or at times other than weekends and holidays. While an occasional mid-week visit may be feasible, more frequent visitation could result in significant expenses for gasoline, wear and tear on a vehicle, and long hours driving for either parent.

*Id.* at 35-36. Father asserts that this finding is inconsistent with the court's conclusion that distance should not be a factor.

[25] While distance is certainly a consideration in this case, we cannot say that it is a major factor, such as in cases where the parents live in different states or many hours away and cannot even exercise regular weekend parenting time. The issue is one of degree. Here, mid-week parenting time will be a hardship on the

parties, but clearly not insurmountable.[4] On weeks when it is not feasible, the parties are tasked with working out a solution for Father to make up this time. Accordingly, we conclude that the trial court's determination regarding parenting time was not clearly erroneous.

[26] Judgment affirmed.

Riley, J., and Brown, J., concur.

---

[4] We note that Father has a flexible work schedule, one that allowed him for more than a year before the modification hearing, to regularly travel to the Dillsboro area for the shared custody arrangement, staying with the children at his parents' home on weekdays and taking the children to Noblesville on weekends.